1  KILPATRICK TOWNSEND & STOCKTON LLP
   THEODORE T. HERHOLD (State Bar No. 122895)
2  ROBERT J. ARTUZ (State Bar No. 227789)
   BYRON R. CHIN (State Bar No. 259846)
3  379 Lytton Avenue
   Palo Alto, CA  94301
4  Telephone:   (650) 326-2400
   Facsimile:   (650) 326-2422
5  Email:  therhold@kilpatricktownsend.com
           rartuz@kilpatricktownsend.com
6          bchin@kilpatricktownsend.com

7  Attorneys for Defendants and Counterclaimants,
   GUIDETECH LLC and RONEN SIGURA
8

9                    UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                         OAKLAND DIVISION

12

13 BRILLIANT INSTRUMENTS, INC.,          Case No. C09-05517 CW (JCS)

         Plaintiff,                      **GUIDETECH LLC'S OPENING CLAIM**
14                                       **CONSTRUCTION BRIEF; OPPOSITION**
         v.                              **TO BRILLIANT'S MOTION FOR**
15                                       **SUMMARY JUDGMENT OF NON-**
   GUIDETECH, INC. and RONEN SIGURA, an  **INFRINGEMENT; AND NOTICE OF**
16 individual,                           **MOTION AND MOTION FOR**
                                         **SUMMARY JUDGMENT ON THE ISSUE**
17       Defendants.                     **OF ASSIGNOR ESTOPPEL**

18 _____   **DEMAND FOR JURY TRIAL**

19 AND RELATED COUNTERCLAIMS
                                         **Date:          June 2, 2011**
20                                       **Time:          2:00 p.m.**
                                         **Courtroom:     2, 4th Floor**
21                                       **Judge:         The Hon. Claudia Wilken**

22        Defendants and Counterclaimants GuideTech LLC ("GuideTech") hereby submits its

23 Opening Claim Construction Brief, Opposition to Plaintiff and Counterdefendant Brilliant

24 Instruments, Inc.'s ("Brilliant") Motion for Summary Judgment of Non-Infringement, and

25 GuideTech's Motion for Summary Judgment on the Issue of Assignor Estoppel, all in one brief,

26 pursuant to the Court's Minute Order and Case Management Order (Dkt. 29), entered herein on May

27 4, 2009.

28



GUIDETECH LLC'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE
OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

The Opening Claim Construction Brief, the Opposition to Brilliant's Motion for Summary Judgment of Non-Infringement, and GuideTech's Motion for Summary Judgment on the Issue of Assignor Estoppel are supported by the Declaration of Byron R. Chin ("Chin Decl.") in Support of GuideTech's Opening Claim Construction Brief, the Opposition to Brilliant's Motion for Summary Judgment of Non-Infringement, and GuideTech's Motion for Summary Judgment on the Issue of Assignor Estoppel and the exhibits attached thereto, the Declaration of Burnell G. West ("West Decl.") in Support of GuideTech's Opening Claim Construction Brief, the Opposition to Brilliant's Motion for Summary Judgment of Non-Infringement, and GuideTech's Motion for Summary Judgment on the Issue of Assignor Estoppel and the exhibits attached thereto, and the Declaration of Sassan Tabatabaei ("Tabatabaei Decl.") in Support of GuideTech's Opening Claim Construction Brief, the Opposition to Brilliant's Motion for Summary Judgment of Non-Infringement, and GuideTech's Motion for Summary Judgment on the Issue of Assignor Estoppel and the exhibits attached thereto, all filed herewith.

The hearing on all three matters shall take place on June 2, 2011 at 2:00 p.m. in the Courtroom of the Honorable Claudia Wilken, Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, California.

GUIDETECH LLC'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY ....................................................................1

II.   CONSTRUCTION OF THE DISPUTED CLAIM TERMS ..............................2

    A.   The Asserted Patents ...............................................................................2

    B.   Claim Construction Principles ...............................................................2

    C.   Signal Channel ........................................................................................4

    D.   Defined Within a Signal Channel ...........................................................5

    E.   Current Source ........................................................................................8

    F.   Current Sink ..........................................................................................11

    G.   Operatively Disposed in Parallel .........................................................11

    H.   Parallel Outputs ....................................................................................13

III.  GUIDETECH'S OPPOSITION TO BRILLIANT'S MOTION FOR
      SUMMARY JUDGMENT OF NON-INFRINGEMENT ................................14

    A.   The Law of Infringement ......................................................................14

    B.   At A Minimum, Genuine Issues Of Material Fact Exist As To
         Whether Brilliant Infringes Each Of The Asserted Claims
         Literally Or Under The Doctrine Of Equivalence ................................14

         1.   The '231 Patent ...........................................................................14

              (a)   "Plurality of measurement circuits defined within
                   [a] signal channel" ......................................................14

              (b)   "[P]rocessor circuit…configured to receive and
                   compare…time signals from said measurement
                   circuits to each other to determine a time
                   interval…" ....................................................................17

         2.   The '671 patent ...........................................................................18

              (a)   "First current circuit having a constant current
                   source" ..........................................................................18

              (b)   "wherein said shunt and said capacitor are
                   operatively disposed in parallel with respect to
                   said first current circuit" .............................................19

              (c)   "[T]ransistor pair and [a] capacitor form parallel
                   outputs with respect to said constant current
                     source" ..........................................................................21

GUIDETECH LLC'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF
ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

iii

**TABLE OF CONTENTS (CON'T)**

Page

        (d)    Current boost circuit . . . configured to apply a voltage transition between said first current circuit and said capacitor" ...................................................................... 21

      3.    Non-infringement of the 6,181,649 (the '649 patent) ...................................... 22

C.    Dr. West's Expert Witness Testimony Should Be Considered Because He Considered Both Parties' Claim Constructions In His Infringement Conclusions ........................................................................ 22

IV.    GUIDETECH'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL.............................................................................. 23

A.    Legal Standard ......................................................................................................... 23

B.    Summary of Facts .................................................................................................... 24

C.    Argument ................................................................................................................... 24

V.    GUIDETECH'S EVIDENTIARY AND PROCEDURAL OBJECTIONS ........................................................................................................... 25

VI.    CONCLUSION ............................................................................................................ 25

GUIDETECH LLC'S CLAIM CONSTRUCTION BRIEF, MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF
ASSIGNOR ESTOPPEL AND OPPOSITION TO BRILLIANT INSTRUMENTS, INC.'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT - - CASE NO. C09-05517 CW (JCS)

iv

# TABLE OF AUTHORITIES

Page

CASES

*Abbott Labs v. Baxter Pharm Prods.,*
334 F.3d 1274 (Fed. Cir. 2003) ...................................................................... 6, 9

*Abbott Labs. v. Sandoz, Inc.,*
566 F.3d 1282 (Fed. Cir. 2009) ...................................................................... 14

*Abbott Labs v. Torpharm, Inc.,*
300 F.3d 1367 (Fed. Cir. 2002) ............................................................... 3, 6, 13

*Acumed LLC v. Stryker Corp.,*
483 F.3d 800 (Fed. Cir. 2006) ......................................................................... 3

*Agfa Corp. v. Creo Prods.,*
451 F.3d 1366 (Fed. Cir. 2006) ............................................................... 3, 5, 6, 9

*Applied Materials, Inc. v. Negevtech, Inc.,*
2005 U.S. Dist. LEXIS 40032 (N.D. Cal. July 13, 2005) ........................... 24, 25

*Astra Aktiebolag v. Andrx Pharms., Inc.,*
483 F.3d 1364 (Fed. Cir. 2007) ........................................................................ 3

*Baxter Healthcare Corp. v. Spectramed, Inc.,*
49 F.3d 1575 (Fed. Cir. 1995) ........................................................................ 14

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP,*
616 F.3d 1249 (Fed. Cir. 2010) ...................................................................... 14

*Carroll Touch, Inc. v. Electro Mech. Sys.,*
15 F.3d 1573 (Fed. Cir. 1993) ........................................................................ 24

*CSIRO v. Buffalo Tech. (USA), Inc.,*
542 F.3d 1363 (Fed. Cir. 2008) ...................................................................... 22

*Diamond Scientific Co. v. Ambico, Inc.,*
848 F.2d 1220 (Fed. Cir. 1988) ...................................................................... 23

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
849 F.2d 1430 (Fed. Cir. 1988) ........................................................................ 3

*Epistar Corp. v. ITC,*
566 F.3d 1321 (Fed. Cir. 2009) ................................................................... 3, 7, 9

*Gillette Co. v. Energizer Holdings, Inc.,*
405 F.3d 1367 (Fed. Cir. 2005) ........................................................................ 3

GUIDETECH LLC'S CLAIM CONSTRUCTION BRIEF, MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF
ASSIGNOR ESTOPPEL AND OPPOSITION TO BRILLIANT INSTRUMENTS, INC.'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT - - CASE NO. C09-05517 CW (JCS)

v

1

# TABLE OF AUTHORITIES (CON'T)

Page

2

**CASES**

3

*Graver Tank & Mfg. Co. v. Linde Air Prods Co.*,
  339 U.S. 605 (1950) ...................................................................................... 14

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
  527 F.3d 1379 (Fed. Cir. 2008) ...................................................................... 13

*Hilgraeve Corp. v. McAfee Assocs.*,
  224 F.3d 1349 (Fed. Cir. 2000) ...................................................................... 20

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
  381 F.3d 1111 (Fed. Cir. 2004) ...................................................................... 12

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
  381 F.3d 1142 (Fed. Cir. 2004) ...................................................................... 15

*Novartis Pharms. Corp. v. Abbott Labs.*,
  375 F.3d 1328 (Fed. Cir. 2004) ...................................................................... 13

*OSRAM GmbH v. ITC*,
  505 F.3d 1351 (Fed. Cir. 2007) .................................................................... 4, 7

*Pandrol USA, LP v. Airboss Ry. Prods.*,
  424 F.3d 1161 (Fed. Cir. 2005) .................................................................. 23, 24

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................ 2, 6, 12

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
  324 F.3d 1346 (Fed. Cir. 2003) ........................................................................ 2

*Shuffle Master, Inc. v. MP Games LLC*,
  553 F. Supp. 2d 1202 (D. Nev. 2008) ............................................................ 25

*Smith v. City of Oakland*,
  2007 U.S. Dist. LEXIS 59941 (N.D. Cal. Aug. 9, 2007) ................................ 25

*Suntiger, Inc. v. Scientific Research Funding Group*,
  189 F.3d 1327 (Fed. Cir. 1999) .................................................................. 15, 17

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
  2007 U.S. Dist. LEXIS 50972 (N.D. Cal. Feb. 6, 2007) ................................ 25

*Texas Instruments, Inc. v. ITC*,
  805 F.2d 1558 (Fed. Cir. 1986) ...................................................................... 16

GUIDETECH LLC'S CLAIM CONSTRUCTION BRIEF, MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF
ASSIGNOR ESTOPPEL AND OPPOSITION TO BRILLIANT INSTRUMENTS, INC.'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT - - CASE NO. C09-05517 CW (JCS)

vi

## I.     INTRODUCTION AND SUMMARY

This is a declaratory judgment action initiated by Brilliant against GuideTech, in which Brilliant seeks declaratory judgment of non-infringement and invalidity of the patents-in-suit owned by GuideTech.  GuideTech, in turn, counterclaimed against Brilliant for infringement of the patents-in-suit, which generally pertain to time interval analyzers used in the semiconductor industry.  As will be shown, applying the proper claim constructions for various claim terms of the patents-in-suit, there are genuine issues of material fact regarding whether Brilliant infringes the patents and therefore its motion for summary judgment of non-infringement should be denied.  Further, because Brilliant's invalidity claims are barred under the doctrine of assignor estoppel, GuideTech is entitled to judgment as a matter of law in its favor on this issue.

Shalom Kattan ("Kattan"), the founder and President of Brilliant, also founded the predecessor of GuideTech, Guide Technology, Inc. ("Guide Technology") in 1988.  (Chin Decl., Ex. 25, at 17:5-8, 42:12-24.)  Between 1988 and 2004, while working for Guide Technology, Mr. Kattan conceived of and developed the inventions that ultimately were claimed in the Asserted Patents.[1] Mr. Kattan assigned these patents to his employer, Guide Technology.  (*Id.* Ex. 12.)  Mr. Kattan's involvement with Guide Technology ended in 2005.  (*Id.* Ex. 27, at 33:7-17.)  In 2008, Guide Technology sold all its assets, including the Asserted Patents, to Ronen Sigura.  (*Id.* Ex. 14, 24.)  Mr. Sigura revived the company as GuideTech and continued to sell Guide Technology's time interval analyzer ("TIA") products.  Some of those products are covered by the Asserted Patents.  Concurrently, GuideTech began developing new TIA products that it intends to market and sell.

Although Mr. Kattan left Guide Technology in 2004, he continued to serve on the board of directors for the company until 2005.  (Chin Decl., Ex. 25, at 33:7-17.)  In 2004, ***while he was still on Guide Technology's board***, Mr. Kattan formed a new company, Brilliant, to secretly develop time interval analyzers that would ultimately compete directly with Guide Technology's patented TIA products.  (*Id.* at 43:21-44:1, 48:14-23, 197:19-25.)  Indeed, Mr. Kattan used his knowledge and experience from working on the designs of Guide Technology's patented products to design

---

[1] U.S. Patent Nos. 6,226,231 ("the '231 patent"), 6,091,671 ("the '671 patent"), and 6,181,649 ("the '649 patent").



Brilliant's new accused products.  (*Id.* at 58:4-20, 60:2-6.)  Mr. Kattan began development of Brilliant's first product in 2004 or 2005.  (Chin Decl., Ex. 7, at 4.)[2]  Not surprisingly as will be demonstrated below, Brilliant's products infringe GuideTech's Asserted Patents.

## II.   CONSTRUCTION OF THE DISPUTED CLAIM TERMS

### A.   The Asserted Patents

The patents in suit are directed to time interval analyzers.  TIAs are test instruments designed to test timing properties of electronic data streams with very high precision.  (West Decl., Ex. 1, ¶ 36.)  Brief summaries of TIA interval analyzer technology and the technology described and claimed in the Asserted Patents are provided in the infringement expert report of Dr. Burnell G. West.  (*Id.*)

Although Brilliant provides a description of the Asserted Patents, this description is not evidence, and mischaracterizes the scope of the patents-in-suit.  (*See* West Decl., ¶ 6.)  Brilliant cites no authority supporting its assertions, which are inadmissible attorney argument.  Brilliant also asserts that Shalom Kattan designed around the patents without citing any supporting evidence.  Accordingly, the majority of Brilliant's argument in its Introduction is improper, and should be disregarded.

### B.   Claim Construction Principles

"When construing claims, a court must begin by 'look[ing] to the words of the claims themselves … to define the scope of the patented invention."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  "Claims must be read in view of the specification, of which they are a part."  *Id.*

In arguing its narrow proposed claim constructions, Brilliant consistently violates several fundamental claim construction principles, which are summarized below:

First, the claims of a patent are entitled to their full permissible breadth, without limitation to the preferred embodiments.  *See Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1358 (Fed. Cir. 2003) ("[A] claim term is to be given 'the full range of its ordinary meaning as understood

---

[2] Brilliant originally asserted that Brilliant began designing its product in June 2004.  (*See* Chin Decl., Ex. 6, at 7.)  Shortly after Mr. Kattan's deposition, however, Brilliant changed this date to June 2005, purportedly because of an "error [] discovered during the deposition of Shalom Kattan." (*Id.* Ex. 7, at 4.)



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

2

by an artisan of ordinary skill'") (quotations and citations omitted).  The claims are not limited to information disclosed in a preferred embodiment.  *See Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371 (Fed. Cir. 2005) ("[A] a patentee typically claims broadly enough to cover less preferred embodiments as well as more preferred embodiments, precisely to block competitors from marketing less than optimal versions of the claimed invention.").  This remains true even if the specification discloses only a single preferred embodiment, or very specific embodiments.  *See Agfa Corp. v. Creo Prods*., 451 F.3d 1366, 1376 (Fed. Cir. 2006) ("[T]his court has repeatedly rejected the contention that depiction of a single embodiment in a patent necessarily limits the claims to that depicted scope.").  Indeed, the "preferred embodiment cannot be the only product covered by the claims; if it were, the claims themselves would be unnecessary." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 (Fed. Cir. 2006).  In fact, the Asserted Patents expressly recite this principle, noting that "[t]he embodiments depicted are present by way of example only and are not intended as limitations on the present invention."  (Chin Decl., Ex. 1 at 16:17-29.)

Second, the Federal Circuit has repeatedly cautioned against reading in extraneous limitations from the specification.  *Astra Aktiebolag v. Andrx Pharms., Inc*., 483 F.3d 1364, 1372 (Fed. Cir. 2007).  It is also improper to read in extraneous limitations for the ostensible purpose of construing claims to preserve their validity.  *See E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1434 (Fed. Cir. 1988).  The intrinsic record may supply claim limitations only if "the patentee disclaimed or disavowed a particular interpretation of the claims during prosecution." *Abbott Labs v. Torpharm, Inc.*, 300 F.3d 1367, 1372 (Fed. Cir. 2002).  As the Federal Circuit has made clear, "[d]isavowal requires expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Epistar Corp. v. ITC,* 566 F.3d 1321, 1335 (Fed. Cir. 2009).  The prohibition on reading in extraneous limitations absent clear disavowal of claim scope is particularly relevant in the instant case because it is undisputed that the prosecution history of the Asserted Patents contains no express disavowal of any claim scope; instead, the patents were allowed with no rejection or narrowing of the claims.

Third, claim constructions that read out the preferred embodiment are improper.  *See Abbott Labs*, 300 F.3d at 1372 (such constructions "are rarely, if ever, correct.").



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

3

1    Finally, the mere fact that a document was submitted to the Patent and Trademark Office

2    ("PTO") during the prosecution of a patent does not limit the scope of the claims. *See OSRAM*

3    *GmbH v. ITC*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) ("It is rare that references that were submitted

4    with a disclosure document, but ***not even cited by the examiner***, are probative of an intent to depart

5    from the plain technical meaning of terms used in the specification and claims.") (emphasis added).

6    Brilliant's systematic violations of these well-established rules of claim construction render

7    its proposed claim constructions improper.  The intrinsic record and the extrinsic evidence show the

8    Court should adopt GuideTech's constructions of the disputed terms as discussed below.

9    **C.   Signal Channel**

| Term | GuideTech's Construction | Brilliant's Construction |
|------|--------------------------|--------------------------|
| Signal channel | An electrical circuit that includes a signal path for transmitting electrical signals and includes one or more parallel measurement circuits. | A physical collection of related components capable of acting independently to perform a useful function on a signal. |

13   There is ample support for GuideTech's proposed construction in the intrinsic record.  In fact,

14   as Brilliant concedes, the specification discloses that each channel "includes *one or more parallel*

15   *measurement circuits.*"  (Chin Decl., Ex. 1 at 3:43-64, 6:1-6 (emphasis added).)  The remainder of

16   GuideTech's proposed construction is disclosed in the intrinsic record.  (*See id.* at 1:41-51, 3:43-64.)

17   Similarly, the extrinsic evidence further supports GuideTech's proposed construction.  The McGraw

18   Hill Dictionary of Scientific and Technical Terms, for example, defines a signal channel as a "signal

19   path for transmitting electric signals."  (Chin Decl., Ex. 18; *see also id.* Ex. 14, *Chambers Dictionary*

20   *of Science and Technology* ("the Chambers dictionary") (defining channel as "[a]ny clear path along

21   which signals and information can be sent.").)  In sum, both the intrinsic record and the extrinsic

22   evidence support GuideTech's proposed construction.

23   Brilliant's dispute with GuideTech's proposed construction is not that it is inaccurate, but that

24   it is an oversimplification because the '231 specification purportedly shows that "a channel requires

25   far more than a 'signal path.'"  (Dkt 108, at 7.)  Brilliant's only support for further limiting the

26   construction of this claim term, however, is to look to the Asserted Patents' preferred embodiment.

27   (*See id.* (citing Fig. 1 of the '231 patent.))  Brilliant asks the Court to limit the construction of "signal

28   channel" to what is disclosed in the Asserted Patents' preferred embodiment.  This is rarely



permitted. *See Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1376 (Fed. Cir. 2006) ("[T]his court has repeatedly rejected the contention that depiction of a single embodiment in a patent necessarily limits the claims to that depicted scope.").

Additionally, Brilliant's proposal that a "signal channel" is "a physical collection of related components capable of acting independently" should be rejected because it is squarely contradicted by the patents' specification. There is nothing in the specification that requires a signal channel to have components that act ***independently*** of each other. In fact, the specification plainly discloses embodiments having signal channels that do ***not*** act independently. The specification notes that "signals *may* cross from one channel to another." (Chin Decl., Ex. ['231 spec] at 6:4-6 (emphasis added).) Additionally, Fig. 1 depicts an embodiment where the signal channels may have overlapping components. (*See id.* at 3:43-64 (disclosing embodiments where channels rely on a shared continuous event time counter and continuous event counter, and/or share a common processor circuit.)

The remaining language in Brilliant's proposed construction, including "a physical collection of *related* components . . . to perform a *useful* function" should also be rejected because it is indefinite and unnecessary. Such extraneous limitations are more likely to create confusion and disputes about what is "related" and what is "useful" than to assist a jury in understanding the claimed invention.

**D. Defined Within a Signal Channel**

| Term | GuideTech's Construction | Brilliant's Construction |
|---|---|---|
| Defined within a signal channel | No construction required OR Present in a signal channel. | A component of only one signal channel. |

To the extent "defined within a signal channel" needs to be construed, GuideTech's proposed construction, "present in a signal channel," will properly assist the jury in understanding the claimed invention without excluding embodiments of the specification and without reading in extraneous limitations. GuideTech's construction is supported by the specification, which discloses examples of measurement circuits that are present within a signal channel. (*See* Chin Decl., Ex. 1, at 3:43-64 ("Each channel, in turn, includes parallel measurement circuits…."), 6:1-6 ("A 'channel' as referred



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE
ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

5

to herein includes one or more parallel measurement circuits….").)  Brilliant agrees that measurement circuits are present in a signal channel.  (Dkt 108, at 7.)

Brilliant, however, insists that "defined within a signal channel" includes an additional limitation that measurement circuits must be a component of "***only one*** signal channel."  Brilliant's assertion is meritless.  First, nothing in the intrinsic record requires Brilliant's proposed limitation.  Surprisingly, Brilliant contradicts itself and admits that measurement circuits may be shared across multiple channels.  (Dkt 108. at 8.)  The asserted claims of the '231 patent require that the *measurement circuits* be defined within a signal channel.  (*See* Chin Decl., Ex. 1, at 16:30-40.)  And the specification expressly contemplates the sharing of measurement circuits across channels.  Brilliant even concedes that the specification discloses that signal channels may share interpolators (*i.e.,* part of the measurement circuits) through the use of a multiplexer.  (*See* Dkt 108 at 8; Chin Decl., Ex. 1, at 6:4-5.)  The specification also teaches that in certain embodiments the measurement circuits can include a time counter and an event counter, and these counters can be shared across channels or each measurement circuit can have its own counter.  (Chin Decl., Ex. 1, at 3:42-50, 56-60.)  Accordingly, Brilliant's proposed construction reads out embodiments disclosed in the specification.  This is rarely, if ever, permitted.  *Abbott Labs*, 300 F.3d at 1372.

Second, Brilliant refers to an embodiment containing three parallel measurement circuits in a single channel.  (*See* Chin Decl., Ex. 1, at 15:16-18.)  Yet the Federal Circuit has repeatedly held that even a very specific embodiment of the invention does not serve to limit the claims.  *See Agfa*, 451 F.3d at 1376; *Phillips*, 415 F.3d at 1323.  Brilliant cannot cite any evidence in the specification that shows that an express intent to restrict "defined within a signal channel" to "only one" signal channel.  *See Abbott Labs*, 300 F.3d at 1372; *Abbott Labs v. Baxter Pharm Prods.*, 334 F.3d 1274, 1278 (Fed. Cir. 2003) ("[O]nly a clear disavowal of subject matter divests claims of broader scope.")

Third, Brilliant's insistence that the DTS 2070/2075  block diagram (the "DTS reference"), submitted during the prosecution of the '231 patent, limits any claim of the Asserted Patents is also meritless.  Brilliant's argument is based on the unfounded assumption that if "defined within a signal channel" is construed as GuideTech proposes, claim 1 of the '231 patent would read on the DTS reference.  Brilliant's argument is flawed because it assumes, incorrectly, that the DTS reference



1    discloses all of the remaining limitations of claim 1 of the '231 patent.  Brilliant has offered no

2    reliable evidence to support its assumption.  To the contrary, the DTS reference is not anticipatory

3    prior art under any reasonable definition; not only is it not an enabling disclosure that would enable a

4    person of ordinary skill in the art to practice the invention of the '231 patent, it also fails to disclose

5    key limitations of the '231 patent.  (Tabatabaei Decl., ¶¶ 6-9.)  Indeed, Brilliant does not even rely

6    on the DTS as anticipatory prior art in its Invalidity Contentions.[3]  (Chin. Decl., Ex. 5.)  And

7    Brilliant's expert, Dr. Kaliski, does not even offer a claim chart in his expert report that shows how

8    each and every limitation of claim 1 is found in the DTS reference.[4]  This is because both Brilliant

9    and Dr. Kaliski know that they cannot show that the DTS reference, a single-paged block diagram,

10   was enabling and disclosed every limitation of claim 1.

11         Additionally, as noted above, the mere fact that Mr. Kattan disclosed the DTS reference

12   during the prosecution of the '231 patent application does not serve to limit the claims.  *See OSRAM*,

13   505 F.3d at 1358.  It is undisputed that the DTS reference was never cited by the examiner in any

14   rejection or narrowing of the claimed invention.  Any suggestion that the examiner would have

15   rejected any claim of the '231 patent in view of GuideTech's proposed claim construction is pure

16   speculation.  Because Mr. Kattan never expressly disavowed any claim scope during prosecution,

17   Brilliant's attempt to read in a limitation of "only one" signal channel must be rejected.  *Epistar*, 566

18   F.3d at 1335 ("Disavowal requires expressions of manifest exclusion or restriction, representing a

19   clear disavowal of claim scope.").   Absent an unmistakable surrender of claim scope in the

20   prosecution history, the Court should adopt a construction that is consistent with the full scope of

21   "defined within a signal channel," as understood by one of ordinary skill in the art.  Such a

22   construction does not include the extraneous "only one signal channel" limitation that Brilliant

23   proposes.  (Tabatabaei Decl., ¶ 5.)

24   _____

25   [3] Nor is Brilliant allowed to rely on the DTS as prior art for any anticipation or obviousness
     argument, because it failed to timely disclose any such theories in its Invalidity Contentions.  (*See*
     Dkt 85, at 4.)

26   [4] Although not in its claim construction argument, Brilliant asserts that its expert Dr. Kaliski
     concluded that the DTS was "highly relevant to claim construction."  (Dkt 108, at 18.)  Dr. Kaliski's
27   statement, however, is purely speculative and conclusory.  Specifically, Dr. Kaliski did not perform a
     limitation by limitation comparison between the DTS and claim 1 of the '231 patent.  Thus, Dr.
28   Kaliski never demonstrates that the DTS would anticipate claim 1 of the '231 patent.



Brilliant's assertions that Guide Technology products, including the GT200 serve to limit the claims is similarly unpersuasive. Unlike the DTS, the GT200 is not in the intrinsic record, as Mr. Kattan never disclosed it to the Patent Office during prosecution.[5] Moreover, Brilliant has no evidence that the GT200 discloses all limitations of the '231 patent claims under GuideTech's proposed constructions. The GT200 is not anticipatory prior art. (*See* Tabatabaei Decl., ¶¶ 10-11.) In sum, the Court should adopt GuideTech's construction of "defined with in a signal channel," and reject Brilliant's proposed construction.

**E.    Current Source**

| Term | GuideTech's Construction | Brilliant's Construction |
|------|--------------------------|--------------------------|
| Current Source | An electrical component that provides electric current. | An active circuit that provides an electrical current that is independent of the voltage across the circuit. |

Brilliant appears to draw a distinction between something that *delivers* current, and something that *provides* current. Because there is no material difference between these terms and to simplify matters, GuideTech has revised its proposed construction to define a "current source" as "an electrical component that *provides* electric current."

GuideTech's straightforward construction is supported by the intrinsic record. The specification discloses numerous examples of electrical components that provide electrical current. (*See, e.g.*, Chin Decl., Ex. 1, at 6:17-25, 8:66-9:4, 9:51-54.) In particular, the specification establishes that, in one embodiment of the invention, a current source can be "established by a stable voltage source and a resistor." (*Id.* at 8:41-42.)

Similarly, the extrinsic evidence supports GuideTech's construction of a current source as an electrical component that provides electric current. (*See, e.g.*, Chin Decl., Ex. 19, Rudolf E. Graf, *Modern Dictionary of Electronics*, (7th Ed. 1999) (defining "current source" as "[a] point from which conventional current flows (electrons flow toward it)"); Ex. 16, James W. Nilsson, *Electronic Circuits* (1983) ("the Nilsson text") at 14 ("[S]ources . . . can be either be delivering or absorbing electrical power. . . . [P]ractical sources can be described in general terms as devices that tend to maintain either voltage or current."); Ex. 15, Wikipedia, *Current Source* ("the Wikipedia article")

---

[5] Brilliant's unsupported, self-serving statement that the GT200 represented what Mr. Kattan "considered old when he filed the applications that matured into the Patents" should be disregarded.


GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

8

("A current source is an electrical or electronic device that delivers or absorbs electric current"); Ex. 22, (Richard C. Dorf & James A. Svoboda, *Introduction to Electric Circuits* (5th Ed. 2001) ("A source is a voltage or current generator capable of supplying energy to a circuit.").  Moreover, one of ordinary skill in the art would understand that a "current source" is simply an electrical component that provides electric current.  (Tabatabaei Decl., ¶ 12.)

Brilliant's proposed construction is similar, but adds a limitation that a current source must provide electric current "that is independent of the voltage across the circuit."[6]  There is nothing in the intrinsic record that requires such an extraneous limitation.  Indeed, Brilliant cites to nothing in the specification or the prosecution history that says a current source must provide current that is independent of the voltage across the circuit.  Even if the specification disclosed an embodiment that included a current source according to Brilliant's proposed construction, a claim's scope should not be limited to a single embodiment of the invention.  *See  Agfa*, 451 F.3d at 1376.  Nor is there any intrinsic evidence showing a clear disavowal of current sources that are not independent of the voltage across the circuit.  *Epistar*, 566 F.3d at 1335.  Thus, nothing in the intrinsic record requires the current to be independent of the voltage across the circuit.  Accordingly, Brilliant's proposed construction must be rejected.

Furthermore, Brilliant's opening brief is misleading because it mischaracterizes the extrinsic evidence.  Brilliant argues that GuideTech's cited extrinsic evidence supports Brilliant's proposed construction.  (Dkt 108, at 11.)  But what Brilliant neglects to mention is that the portions of the extrinsic evidence it cites are not discussing current sources in general but rather one type of current source called an *ideal* current source.  The extrinsic evidence distinguishes between ideal current sources and real (or practical) current sources, both of which are included within the scope of GuideTech's construction because there was no express disavowal of claim coverage for non-ideal current sources.  *Abbott Labs*, 334 F.3d at 1278.  The extrinsic evidence makes clear that only *ideal* current sources are independent of the voltage across the circuit.  (*See* the Wikipedia article ("[A]n *ideal current source* is a circuit element where the current through it is independent of the voltage

---

[6] Brilliant curiously imposes an additional limitation of an "active circuit," but similarly provides no support for this extraneous limitation.



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

9

across it.") (emphasis original); the Nilsson text ("The *ideal independent current source* is a circuit element that will maintain a prescribed current within its terminals regardless of the voltage across its terminals.") (emphasis original); Chin Decl., Ex. 20, Paul Horowitz & Winfield Hill, *The Art of Electronics* (1980) ("the Horowitz & Hill text") at 9 ("a *perfect* current source…maintains a constant current through the external circuit, regardless of… applied voltage.")[7]  While an ideal current source is a type of current source, not all current sources are ideal current sources.  (Tabatabaei Decl., ¶¶ 13-16.)  In fact, the extrinsic evidence makes clear that ideal current sources are purely theoretical in nature.  (*See, e.g*, the Wikipedia article, at 3 ("[A]n ideal current source, if such a thing existed in reality, could supply unlimited power and so would represent an unlimited source of energy."; the Horowitz & Hill text at 9 ("Real current sources (a much-neglected subject in most textbooks) have a limit to the voltage they can provide …[and] do not provide absolutely constant output current.").)  One of ordinary skill in the art would understand that ideal current sources do not exist in real circuits, and GuideTech's proposed construction for "current source" is accurate.  (Tabatabaei Decl., ¶¶ 13-16.)

Real current sources, in contrast, can be dependent on the voltage across the circuit.  (*See, e.g.,* the Nilsson text at 15; the Horowitz & Hill text at 9 (describing "real" current sources); Tabatabaei Decl., ¶¶ 14-15.)  Indeed, the extrinsic evidence shows that ideal current sources are approximated in real life by, for example, "a series combination of a voltage source and resistor. (*See* Chin Decl., Ex. 28, at 1:41-47.)  Thus, Brilliant's proposed construction of "current source" is too limiting and is inconsistent with the extrinsic evidence.[8]

In sum, the intrinsic and extrinsic evidence support GuideTech's construction, and show that Brilliant's proposed construction improperly limits current sources to the purely theoretical ideal

---

[7] This is the same passage of the Nilsson text that Brilliant cites.  Brilliant, however, leaves out the fact that this quote concerns only ideal current sources, as well as omitting the first page of the Nilsson text, which describes current sources in broader terms.  (*See* the Nilsson text at 14.)

[8] Dr. Tabatabaei's deposition testimony confirms that Brilliant's proposed construction is too narrow.  When asked by Brilliant's counsel about *ideal* current sources, Dr. Tabatabaei agreed only that ideal current sources are independent of voltage, not all current sources generally.  (*See* Chin Decl., Ex. 26, at 82:23-83:6.)  Dr. Tabatabaei then gave an example of a non-ideal current source that did depend on voltage, noting, "you can change that current through this voltage or this voltage, but if these are constant you get constant [current]."  (*Id.* at 83:18-20.)

GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

10

current source.  Thus, the Court should adopt GuideTech's construction for "current source."

**F.    Current Sink**

To further simplify matters for the Court, GuideTech will agree to Brilliant's proposed construction of a current sink as "a current source that draws an electrical current."

**G.    Operatively Disposed in Parallel**

| Term | GuideTech's Construction | Brilliant's Construction |
|------|--------------------------|--------------------------|
| Operatively disposed in parallel | Arranged in a manner capable of forming alternate paths of current, such that current can flow across one or the other path | Forming alternative signal paths between the same source and destination, wherein the same voltage change occurs across both paths. |

In the interest of compromise, GuideTech has slightly modified its definition of "operatively disposed in parallel" to mean "arranged in a manner capable of forming alternate paths of current, such that current can flow across one or the other path."  The intrinsic record supports GuideTech's proposed construction.  Specifically, Fig. 4 of the specification discloses a shunt 112 and a capacitor 96 that are operatively disposed in parallel with respect to the first current circuit.  (Chin Decl., Ex. 1, at Fig. 4 and 8:30-40, 8:52-54, 9:26-67.)  The shunt and the capacitor are arranged in a manner capable of forming alternative paths of current, such that current can flow across one or the other path.  Particularly, as shown in Fig. 4, the path of current from the first current circuit divides such that one current path goes to the shunt and an alternate current path goes to the capacitor.[9] (Tabatabaei Decl., ¶ 18.)  Depending on the state of the shunt (a current switch) current can be directed down the path leading to the shunt or down the path leading to the capacitor.  (*Id.* ¶ 20.)  Accordingly, shunt 112 and capacitor 96 are operatively disposed in parallel as required by claim 1 of the '671 patent.

Contrary to Brilliant's assertions, GuideTech's proposed construction does not read out "parallel" from the claims.  The construction of "parallel" in GuideTech's proposed construction is reflected in the language: "forming alternate paths of current, such that current can flow across one or the other path."  The limitation of "operatively disposed," on the other hand, requires the parallel components (*e.g.*, the shunt and the capacitor) be "arranged in a manner capable of providing the

---

[9] GuideTech has provided an annotated version of Fig. 4 that depicts this configuration. (Tabatabaei Decl., Ex. 1.)

GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

11

"alternate paths." *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1120 (Fed. Cir. 2004) (construing "operatively connected" to mean "arranged in a manner capable of performing the function"). (*See also* Chin Decl., Ex. 17, Robert I. Sarbacher, *Encyclopedic Dictionary of Electronics and Nuclear Engineering* (1959) (defining "operative" as "having force, being in effect or operation.").) Thus, the intrinsic and extrinsic evidences support GuideTech's proposed construction of "operatively disposed in parallel."

Brilliant's proposed construction is improper because it violates basic rules of claim construction. First, Brilliant's proposed construction construes only "disposed in parallel," and reads out the term "operatively" as if it did not exist in the claim. Brilliant appears to admit that to be "operatively disposed in parallel" means to "operate as though they are parallel," but this definition is not reflected in Brilliant's proposed construction. (Dkt 108, at 13.) This suggests that the claimed components are not really in parallel. For Brilliant to suggest this demonstrates that it does not even agree with its own proposed construction.

Although Brilliant's proposed construction of "disposed in parallel" may be consistent with certain extrinsic definitions of parallel, the patent specification does not use the term "parallel" in the way Brilliant has construed it. *See Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."). Moreover, there is nothing in the intrinsic record that *requires* parallel components to form alternative signal paths between the same source and destination or the same voltage change occurs across both paths. It is undisputed that shunt 112 and capacitor 96 are operatively disposed in parallel with respect to the first current circuit. This is the preferred embodiment of the invention that is covered by claim 1 of the '671 patent. Although the paths to these components share the same source, the first current circuit, they do not share the same destination. (Tabatabaei Decl., ¶¶ 19-20.) While the path to the capacitor goes to ground (0 volts), the alternate path to the shunt (when closed) goes to negative five volts. (*See id.* Ex. 1. (graphically illustrating current paths in embodiment).) Accordingly, the parallel paths between the shunt and the capacitor do not share the same source and destination and, similarly, the same voltage change does not occur across both paths. *Id.*



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

12

In sum, Brilliant's proposed construction excludes the preferred embodiment. As the Federal Circuit has noted, constructions that exclude the preferred embodiment "are 'rarely, if ever, correct." *Abbott Labs*, 300 F.3d at 1372; *see also Novartis Pharms. Corp. v. Abbott Labs*., 375 F.3d 1328, 1336 (Fed. Cir. 2004). Brilliant in fact concedes this point, noting that "the shunt and capacitor that provide support for the asserted claims are not strictly parallel." (Dkt 108, at 13.) Brilliant's proposed construction should be rejected.

The extrinsic evidence further supports GuideTech's proposed construction. (*See* Chin Decl., Ex. 17, Robert I. Sarbacher, *Encyclopedic Dictionary of Electronics and Nuclear Engineering* (1959) (defining "parallel circuit" as "A circuit in which two or more components are connected across the same pair of lines or terminals so that current divides between the components."); the Chambers dictionary ("**parallel** (*ElecEng*) Two circuits are said to be in parallel when they are connected so that any current flowing divides between the two.").) Brilliant's extrinsic evidence, in contrast, cannot overcome the specification's teachings, including the parallel configuration depicted in Fig. 4. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008). Accordingly, the meaning of "parallel" given by the intrinsic record controls notwithstanding Brilliant's proffered extrinsic evidence.

In sum, the intrinsic record makes clear that "parallel" does not require the "same voltage change" between alternative paths as Brilliant suggests, but merely alternative paths of current. Thus, the Court should adopt GuideTech's construction.

### H.     Parallel Outputs

| Term | GuideTech's Construction | Brilliant's Construction |
|------|--------------------------|--------------------------|
| Parallel outputs | Outputs that are arranged such that a current path divides between the outputs | Alternative output signal paths to a common destination, wherein the same voltage changes occur across both paths. |

GuideTech defines parallel outputs as "[o]utputs that are arranged such that a current path divides between the outputs." As Brilliant notes, the main difference between the parties' constructions is Brilliant's requirement that the same voltage change occurs across both signal paths. Brilliant also requires that signal paths lead to "a common destination." These are essentially the same limitations at issue for "operatively disposed in parallel." Thus, as explained above,



GuideTech's definition is supported by the intrinsic record and extrinsic evidence.  Brilliant's definition squarely contradicts the intrinsic record, including the meaning of "parallel outputs" as defined by the preferred embodiment that is depicted in Fig. 4.  *See supra* Part II.G.  Accordingly, the Court should adopt GuideTech's construction of parallel outputs.

## III.   GUIDETECH'S OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

### A.   The Law of Infringement

While claim construction is a question of law, the infringement determination is "a question of fact." *Baxter Healthcare Corp. v. Spectramed, Inc.,* 49 F.3d 1575, 1582 (Fed. Cir. 1995).  An accused product literally infringes a patent claim if the patentee can show that the accused product contains every limitation of the asserted claim.  *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (citations omitted).  A patentee may also show that an aspect of the accused product meets a claim limitation under the doctrine of equivalents if it "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods Co.*, 339 U.S. 605, 608 (1950).  "Equivalency may also be proven where the differences between the invention as claimed and the accused product or process are insubstantial." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1297 (Fed. Cir. 2009).

### B.   At A Minimum, Genuine Issues Of Material Fact Exist As To Whether Brilliant Infringes Each Of The Asserted Claims Literally Or Under The Doctrine Of Equivalence

#### 1.   The '231 Patent

Brilliant asserts that the accused products lack two elements of the '231 patent: (1) "A plurality of measurement circuits defined within [a] signal channel…" and (2) "a processor circuit…configured to receive and compare…time signals from said measurement circuits to each other to determine a time interval…"  Brilliant provides no arguments that the accused products do not meet the limitations in the dependent claims of the '231 patent.  (Dkt 108, at 17.)

##### (a)   "Plurality of measurement circuits defined within [a] signal channel"

As set forth in the expert reports of Dr. West, Brilliant's accused products infringe this claim limitation under Brilliant's proposed construction either literally or under the doctrine of equivalents.



(West Decl., ¶¶ 8-11; Ex. 1 at A2-A5.)  Brilliant's main noninfringement argument for this claim limitation is that the aforementioned DTS reference precludes infringement.  As GuideTech has already explained at length in its claim construction arguments, there is no evidence that the DTS reference would anticipate claim 1 of the '231 patent under GuideTech's proposed construction.  *See supra* Part II.C.  Brilliant has failed to demonstrate that the Court should limit the scope of the claims based on the sparse and ambiguous disclosure of the DTS reference.  Moreover, the DTS reference is completely irrelevant to the issue of infringement.  Brilliant cannot escape infringement by arguing that its products are the same or similar to an alleged prior art reference.  Not only has Brilliant failed to present evidence of this, Brilliant's "practicing the prior art" defense to infringement is forbidden under Federal Circuit law.  *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("[T]his court has made clear that there is no 'practicing the prior art' defense to literal infringement.").

Even if the Court adopts Brilliant's proposed construction, there is still a dispute of material fact as to whether the accused products infringe literally or under the doctrine of equivalents.  Dr. West concludes that the accused products literally meet the "defined within a signal channel" limitation even under Brilliant's improperly narrow construction of "a component of only one signal channel."  Specifically, it is undisputed that Brilliant's accused products operate in a one-channel-two-edge mode.  (West Decl., ¶ 9, Ex. 1 at A2-A3.)  In this mode, at a minimum, the two measurement circuits of the accused products are components of only one channel because such measurements require the use of *both* timetagging circuits.  (*Id.*)  Indeed, Brilliant admits that for measurements requiring a second measurement circuit, "the channel whose measurement circuit is 'borrowed' is unavailable."  (Dkt 108, at 18.)  The fact that a second inactive channel may exist when the first channel is using the two measurements cannot preclude infringement.  *Suntiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1336 (Fed. Cir. 1999) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device.") (quotations and citations omitted).  Even Brilliant's own documents demonstrate that the accused measurement circuits are components of only one signal channel.  For example, the BI200 Datasheet states:  "The 1C2E functions (one-channel-two-edge) operate **on a**

*single channel* and use both timetagging circuits." (Chin Decl., Ex. 10, at 3.)   In other words, both

timetagging circuits (the measurement circuits) are components of only one channel.

It strains credibility for Brilliant to assert that its products have only "one measurement

circuit per [signal] channel." (Dkt 108, at 18.)  A signal channel that is incapable of having more

than one measurement circuit would only be able to take a single measurement within a typical

integrated circuit frequency interval.  (West Decl., ¶ 10.)  A single measurement in isolation is

useless; after all, the instruments at issue are time *interval* analyzers, and two measurements are

required to make an interval.  (*Id.* ¶ 10, Ex. 1 ¶ 77.)

Brilliant makes the further argument that it cannot infringe the '231 patent because the

accused products allegedly do not take advantage of some of the advantages of particular

embodiments of the claimed invention.  (Dkt 108, at 19:1-5.)  This argument has also been squarely

rejected by the Federal Circuit.  *Texas Instruments, Inc. v. ITC,* 805 F.2d 1558, 1564 (Fed. Cir. 1986)

("infringement cannot be avoided by the mere fact that the accused device is more or less efficient or

performs additional functions") (citation omitted).

Finally, even if the Court were to find that that the accused products do not literally infringe

this limitation, the products still infringe under the doctrine of equivalents.  In the Brilliant accused

products, "the physical placement of the accused measurement circuits is equivalent to being of only

one signal channel because such placement performs substantially the same function…in

substantially the same way…to achieve substantially the same result." (West Decl., Ex. 2 ¶ 13.)

As set forth in the expert reports of Dr. West, Brilliant's accused products infringe this claim

limitation under GuideTech's proposed construction either literally or under the doctrine of

equivalents.  (West Decl., ¶ 11, Ex. 1 at A2-A5, Ex. 2 at ¶ 12.).  Brilliant has presented no argument

or evidence to the contrary.

In sum, Brilliant cannot show that there is no genuine dispute of material fact with respect to

whether the Brilliant accused products infringe the "plurality of measurement circuits defined within

[a] signal channel" claim limitation of the '231 patent.



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE
ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

16

**(b)** **"[P]rocessor circuit…configured to receive and compare…time signals from said measurement circuits to each other to determine a time interval…"**

Brilliant's sole argument that its accused products do not meet this claim limitation is based on an alleged distinction between "time tags," as used in the Brilliant products and "time signals," as stated in the claim. This alleged distinction, however, is insufficient to show that there is no genuine dispute of material fact as to Brilliant's infringement of this claim limitation.

First, there is no support for Brilliant's position that "time signals" are confined to "a voltage across a capacitor." Brilliant has offered no unique construction for the term "time signal." Under the term's plain meaning, there can be no dispute that the accused "time tags" are signals because they are electrical quantities (e.g., analog or digital measurements) that are generated by the accused products' timetag circuits. (West Decl., ¶ 12, Ex. 1, at A2-A3.) Additionally, it is fairly obvious that these *time* tags are representative of a time value. According, the accused time tags are in fact time signals. (*Id.*)

Alternatively, even if the claimed "time signals" were not time tags of the accused products, there would still be literal infringement of this claim limitation. Brilliant concedes that its accused products calculate time tags from "'time signals' and other information." (Dkt 108, at 19.) Accordingly, the time tags include a time signal value, including, for example, an interpolator measurement. (West Decl., ¶ 13, Ex. 1, at A2-A3.) For example, the BI200 Datasheet confirms that "[w]hen an event is timetagged, the event count (pulse number) and ***the time of the occurrence*** are logged to memory." (Chin Decl., Ex. 10, at 2.) When the processor circuit of the accused products compares the time tags associated with each measured event, it also compares the time signals associated with the time tag. (West Decl., ¶ 13.) Indeed, the BI200 Datasheet confirms that "[f]rom this timetag data the instrument calculates the measurement result." (Chin Decl., Ex. 10, at 2.) Brilliant cannot avoid infringement simply by arguing that when the processor associated with the accused products compares the time signals within the time tags, it also compares other data associated with the time tag (e.g., counter information). *Suntiger*, 189 F.3d at 1336 ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device.") (quotations and citations omitted).


GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

17

## 2.      The '671 patent

Brilliant asserts that the accused products do not practice two elements of the claims of the '671 patent: (1) a "first current circuit having a constant current source," and (2) a shunt and capacitor "operatively disposed in parallel with respect to said first current circuit."  (Dkt 108, at 21.)

### (a)      "First current circuit having a constant current source"

As set forth in the expert reports of Dr. West, Brilliant's accused products infringe this claim limitation under Brilliant's proposed construction either literally or under the doctrine of equivalents. (West Decl., ¶ 14; Ex. 1, ¶¶ 64-65, A22-23.)  Brilliant's proposed construction for "current source" requires "an active circuit that provides an electrical current."  Dr. West has identified infringing current sources of the accused products that each include at least a voltage source and a resistor. (*Id.*)  There can be no dispute that these components form an active circuit that provides an electrical current.  (*Id.*)  The remainder of this claim limitation and Brilliant's proposed construction require that the supplied current be "constant" and "independent of the voltage across the circuit."  Dr. West has opined that an operational amplifier of the accused first current circuit operates to maintain constant current flow from the current source.[10]  (*See id.* ¶ 14, Ex. 1, at A22.)  Accordingly, this current would be independent of the voltage across the circuit.  *Id.*  Thus, the constant current source is not merely a vague entity "maintained to the left" as Brilliant asserts, but a readily ascertainable structure.

Moreover, any dispute over the exact bounds of the constant current source is irrelevant,[11] as Dr. West's live testing of the Brilliant accused products showed that there was in fact constant current flowing to the capacitor during the operation of the Brilliant products.  (*See* West Decl., Ex. 1, at A22-23, Ex. 4.)  Accordingly, empirical data obtained by Dr. West illustrates the existence of a constant current source.  (*See id.* at A22-23.)  In contrast, Brilliant's expert Dr. Kaliski failed to test the accused products at any time.  Thus, Brilliant cannot show that there is no "constant current

---

[10] The integrator function of the operational amplifier serves to restore voltage after any transient period, thus integrating it to the value it would have supplied had the voltage remained constant across the resistor at that time.  (West Decl., ¶ 14, Ex. 1, at A22.)

[11] Although Brilliant insists Dr. West intended for the entire first current circuit to constitute the current source, when he drew a boundary around it, Dr. West was instead illustrating that the current source was located in the general area of the first current circuit.  (West Decl., ¶ 14.)



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

18

source" in its accused products.

Because the accused products have a constant current source, the components that make up that source are part of the infringing "first current circuit." The first current circuit of the asserted claims that require a *constant* current source include at least the identified voltage source, the resistor, and the operational amplifier. (West Decl., ¶¶ 14-15, Ex. 1, at A22-23.)

Even if, under Brilliant's proposed construction, the accused products do not literally meet the "first current circuit" limitation, they infringe under the doctrine of equivalents. Dr. West has set forth a competent opinion confirming that, at a minimum, components of the accused products perform substantially the same function, in substantially the same way, to achieve substantially the same result as that of the constant current source of the claimed inventions. (West Decl., ¶ 15, Ex. 1, at A22-23, Ex. 2, ¶ 8.)

In summary, there is a genuine issue of material fact as to whether the Brilliant accused products meet this claim limitation even under Brilliant's incorrect construction. Specifically, Dr. West opined that even under Brilliant's improper construction, the Brilliant accused products nevertheless contained a "current source" either literally or under the doctrine of equivalents. (*See* West Decl., ¶¶ 14-15, Ex. 1, at A22-23, Ex 2, at ¶ 9.) Thus, Brilliant cannot show that there is no genuine dispute of material fact as to whether the Brilliant accused products meet the "first current circuit having a constant current source" limitation of the '671 patent.

Under GuideTech's proposed construction of a current source, "an electrical component that provides electric current," Brilliant infringes for the same reasons as discussed above. There can be no genuine dispute that the accused voltage source and the resistor of the accused products, as discuss above, "provide electric current." Additionally, as discussed above, the current from this source is maintained constant by the operation of the aforementioned operational amplifier. (West Decl., ¶¶ 14-15, Ex. 1, at A22-23.) These components identify the location of the accused first current circuit of the accused products.

> **(b)** **"wherein said shunt and said capacitor are operatively disposed in parallel with respect to said first current circuit"**

As set forth in the expert reports of Dr. West, Brilliant's accused products infringe this claim limitation under Brilliant's proposed construction under the doctrine of equivalents. (West Decl., ¶


GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE
ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

19

16, Ex. 1, at A25, Ex. 2, at ¶ 17.)  Brilliant's proposed construction for "operatively disposed in parallel" requires the components to "form[ ] alternative signal paths between the same source and destination, wherein the same voltage change occurs across both paths."  As shown in Exhibit 2 of Dr. West's expert report, the accused shunt (defined in part by transistors Q5 and Q6) and measurement capacitor (C334 and/or C336) form alternative signal paths between a common source and different destinations.  (West Decl., ¶ 16, Ex. 1, at Ex. 2.)  The common source is the current flowing from the first current circuit including R243.  *Id.*  As also shown in Exhibit 2, the signal path leading for R243 splits and forms alternative signal paths:  one to the shunt and down to the accused current sink (depending of Q6) and one to the capacitor(s).  Although these signal paths do not share a common destination, neither does the preferred embodiment of the Asserted Patents.  (See GuideTech's claim construction argument at Part II.G, *supra*).

As discussed above, Brilliant's proposed claim construction reads in extraneous limitations from outside sources and is in contradiction with the specification.  Nonetheless, to the extent all or a portion of Brilliant's proposed construction is adopted, the accused products meet this limitation under the doctrine of equivalents.  (West Decl., ¶ 16, Ex. 1, at A25, Ex. 2, at ¶ 17.)  Particularly, the shunt and the measurement capacitor(s) of the accused products are disposed such that they operate as if they were in parallel with respect to the first current circuit.  (*Id.*)  When the shunt is switched such that Q6 is on, current will flow from the first current circuit through the shunt and to the current sink.  (*Id.*)  In contrast, if the shunt is switched such that Q6 is off, current flowing from the first current circuit will take an alternate path and flow to the measurement capacitor(s).  (*Id.*)  Dr. West has confirmed that this configuration is equivalent to the components being operatively disposed in parallel under Brilliant's proposed construction.  (*Id.*)  Brilliant even admits that the language "operatively disposed in parallel" merely requires that the components operate "as though they are in parallel" and not as if they are actually in parallel.  (Dkt 108, at 13.)

In summary, there is a genuine issue of material fact as to whether the Brilliant accused products meet this claim limitation under the doctrine of equivalents even under Brilliant's incorrect construction.  *Hilgraeve Corp. v. McAfee Assocs.*, 224 F.3d 1349, 1352 (Fed. Cir. 2000) (summary judgment was improper where "conflicting allegations of experts leaves material factual questions



GUIDETECH'S OPENING CLAIM CONSTRUCTION BRIEF; OPPOSITION TO BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; AND NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL - - CASE NO. C09-05517 CW (JCS)

20

1    unanswered.").

2          Under GuideTech's proposed construction of "operatively disposed in parallel," the

3    components need only be "arranged in a manner capable of forming alternate paths of current, such

4    that current can flow across one or the other path."  As discussed above, the accused shunt and

5    measurement capacitor(s) are arranged such that they form alternative paths of current, such that

6    current can flow from the first current circuit and across one path (to or through the shunt) or across

7    the other path (to the measurement capacitor(s)) depending on the state of the shunt (a current

8    switch).  (West Decl., ¶ 16; Ex. 1, at A25.)  Accordingly, this configuration of components literally

9    meets this claim limitation.

10              **(c)     "[T]ransistor pair and [a] capacitor form parallel outputs with
                         respect to said constant current source"**

11          Claim 15 of the '671 patent requires that a "transistor pair and [a] capacitor form parallel

12   outputs with respect to said constant current source."  Although Brilliant asserts that the transistor

13   pair and capacitors of the accused products' measurement circuits do not form parallel outputs,

14   Brilliant cites no supporting evidence, and merely offers conclusory arguments.  In contrast, Dr.

15   West has concluded that the Brilliant accused products meet this limitation of Claim 15, either

16   literally or under the doctrine of equivalents, for many of the same reasons the accused products

17   meet the limitation of "operatively disposed in parallel" under both parties' proposed constructions.

18   (*See* West Decl., Ex. 1 at A31; *see also id.* at A22 (identifying transistor pair); Ex. 2, ¶¶ 18-19.)

19   Accordingly, Brilliant cannot show there is no genuine dispute of material fact with respect to

20   whether the accused products infringe claim 15 of the '671 patent.

21              **(d)     Current boost circuit . . . configured to apply a voltage transition
                         between said first current circuit and said capacitor"**

22

23          This claim limitation appears in claim 20 of the '671 patent.  The parties have agreed that a

24   "current boost circuit" means "a circuit that increases current flow to or from an electrical

25   component."  (Dkt 84, at 2.)  GuideTech's expert Dr. West has set forth opinions and empirical

26   evidence demonstrating that the accused products include a current boost circuit that increases

27   current flow to the measurement capacitors.  (West Decl., ¶¶ 17-18, Ex. 1 ¶¶ 71, 74-77, A37, Ex. 7.)

28   Indeed, this is exactly how the measurement capacitors of the accused products are charged so

1    quickly.  (*Id.*)  Brilliant's primary non-infringement argument is that the accused current boost

2    circuit does not literally "apply a voltage transition between said first current circuit and said

3    capacitor."  Dr. West, however, explained in his deposition that this limitation was met under the

4    doctrine of equivalents.  (Chin Decl., Ex. 27, at 123:3-124:10.)  Brilliant was on notice of Dr. West's

5    equivalence argument because his expert report specifically relies on equivalence for this claim

6    limitation.  (West Decl., Ex. 1, at A37-38.)  Similarly, GuideTech's infringement contentions also

7    put Brilliant on notice of the doctrine of equivalents for this claim limitation.  (Dkt 104-17, at 5 and

8    A29-A30.)  Brilliant's only support for its noninfringement argument is its expert Dr. Kaliski's

9    opinions.  Yet, as previously noted, summary judgment is improper in light of conflicting expert

10   opinions.  *See, e.g.*, *CSIRO v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1378 (Fed. Cir. 2008).

### 3.    Non-infringement of the 6,181,649 (the '649 patent)

12   The two claim terms that Brilliant asserts it does not infringe under the '649 patent are: (1) a

13   shunt and capacitor "operatively disposed in parallel with respect to [a] first current circuit" having

14   "a current source or current sink," and (2) "a current boost circuit…configured to apply a voltage

15   transition between said first current circuit and said capacitor upon occurrence of said reference

16   event...."  For reasons discussed in connection with claims 1 and 20 of the '671 patent, Brilliant has

17   failed to show that there is no disputed issue of material fact for these claims.

### C.    Dr. West's Expert Witness Testimony Should Be Considered Because He Considered Both Parties' Claim Constructions In His Infringement Conclusions

19   Brilliant's argument that Dr. West's testimony should be disregarded fails on numerous

20   counts.  Despite devoting an entire subsection to criticizing Dr. West's testimony in its brief,

21   Brilliant did not timely file a motion to exclude Dr. West's testimony by the April 1, 2011 deadline.

22   GuideTech maintains that it is now too late for Brilliant to do so.  (*See* Dkt 116.)

23   First, Brilliant again mischaracterizes the references disclosed to the Patent Office as material

24   "prior art."  As previously noted, there is no evidence that the references that Mr. Kattan submitted

25   to the Patent Office during prosecution are in fact anticipatory prior art, nor is there any evidence

26   that Mr. Kattan ever limited the claimed invention during the prosecution of the Asserted Patents to

27   avoid the references cited.  *See supra* Part II.C.  Thus, when he reviewed the file histories of the

28   Asserted Patents, Dr. West did not find it necessary to review the references disclosed to the Patent



Office.  (West Decl., ¶ 20.)  Thus, Brilliant's assertion that Dr. West failed to consider prior art is false; instead, it was never necessary for Dr. West to consider references that were disclosed to the PTO but not considered by the examiner during prosecution because they did not narrow the scope of the claims.

Second, Brilliant misstates Dr. West's testimony to imply that he did not study the Patents in Suit.  In particular, Brilliant incorrectly asserts that Dr. West did not sufficiently study Figs. 4A and 4B of the Asserted Patents.  Dr. West's testimony, however, makes clear that he did not study these figures only in the context of the '671 patent, in relation to their use of diode bridges, which are disclosed only in unasserted claims of the Asserted Patents.  (*See* Chin Decl., Ex. 27 at 211:10-23; West Decl., ¶ 21.)  Brilliant has no evidence that Dr. West failed to review relevant portions of the Asserted Patents.

Nor is Dr. West's testimony affected in any way by the existence of the ITS9000 TIA.  As GuideTech has already explained at length in its Opposition to Brilliant's Motion for Leave to Amend its Invalidity Contentions (Dkt 99), all salient aspects of the architecture of the ITS9000 were later disclosed in patents, including U.S. Patent No. 6,081,484.  Thus, there was no trade secret prior art for Dr. West to purportedly disclose to GuideTech's attorneys.  (*Id.* at 4.)

Finally, Brilliant has no evidence that Dr. West applied any incorrect claim constructions.  Brilliant plainly ignores Dr. West's supplemental expert report dated February 28, 2011.  (West Decl., Ex. 2.)  In the supplemental report, Dr. West analyzed the Brilliant accused products under both GuideTech and Brilliant's proposed claim constructions, and concluded that they infringed the Asserted Patents under either party's proposed construction.  (*Id.* at ¶¶ 6-25.)

## IV.    GUIDETECH'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ASSIGNOR ESTOPPEL

### A.    Legal Standard

"Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988).  "[A]ssignor estoppel prevents an assignor from asserting that its own patent, for which it may have received value upon assignment, is invalid and worthless." *Pandrol USA, LP v. Airboss Ry. Prods.*, 424 F.3d 1161, 1166

(Fed. Cir. 2005).

Where the patentee has assigned the rights of the patent for consideration, "an assignor and parties in privity with the assignor are estopped or barred from asserting invalidity defenses." *Id.* Where an inventor "sign[s] the Oath, Power of Attorney and Petition and [has] assigned the patent rights to another for valuable consideration, the equities tip in favor of applying assignor estoppel" and the Court may grant summary judgment of assignor estoppel. *Applied Materials, Inc. v. Negevtech, Inc.*, 2005 U.S. Dist. LEXIS 40032, at *15 (N.D. Cal. July 13, 2005).

**B.    Summary of Facts**

Shalom Kattan is the named inventor on all of the Asserted Patents. (Chin Decl., Exs. 1-3.) Mr. Kattan assigned the Asserted Patents for valuable consideration to Guide Technology. (Chin Decl., Exs 1-3, 14.) In 2004, ***while he was still on Guide Technology's board***, Mr. Kattan formed a new company, Brilliant, to secretly develop time interval analyzers that would ultimately compete directly with Guide Technology's patented TIA products. (*Id.* at 43:21-44:1, 48:14-23, 197:19-25.) Mr. Kattan is now the president of Brilliant. (Chin Decl., Ex. 9; *see also* Dkt 86, at 2.) Meanwhile, in 2008, GuideTech acquired the assets of Guide Technology, Inc., including the Asserted Patents. (Chin Decl., Exs 13, 24.) GuideTech is the current owner of the Asserted Patents. Brilliant asserts that the Asserted Patents are invalid. (Dkt 18, at ¶¶ 52-56.)

**C.    Argument**

The abovementioned facts make clear that Shalom Kattan, the inventor of the Patents in Suit, assigned them to GuideTech's predecessor in interest Guide Technology for valuable consideration. Mr. Kattan is accordingly estopped from asserting invalidity of the Asserted Patents against GuideTech. *Carroll Touch, Inc. v. Electro Mech. Sys.*, 15 F.3d 1573, 1581 (Fed. Cir. 1993) (assignor estoppel applies "when, as here, the inventor-assignor has signed the Oath, Power of Attorney and Petition, which attests to his belief in the validity of the patents, and has assigned the patent rights to another for valuable consideration.") (quotations omitted). Similarly, Brilliant, as a party in privity with Mr. Kattan, is also estopped from asserting invalidity of the Asserted Patents against GuideTech. *Id.* at 1581 ("The estoppel also operates to bar other parties in privity with the assignor, *such as a corporation founded by the assignor*.") (emphasis added).



1    Finally, assignor estoppel is an issue ripe for adjudication at this stage in this case, as the

2    undisputed facts set forth here constitute complete grounds for applying assignor estoppel against

3    Brilliant.  *See Applied Materials*, 2005 U.S. Dist. LEXIS 40032, at *15 (granting summary judgment

4    of assignor estoppel upon factual showing identical in scope to that offered here).[12]  Accordingly,

5    GuideTech respectfully requests that the Court grant summary judgment of assignor estoppel.

6    **V.    GUIDETECH'S EVIDENTIARY AND PROCEDURAL OBJECTIONS**

7    Brilliant relies extensively on Dr. Kaliski's expert reports to support its motion for summary

8    judgment.  GuideTech objects to Dr. Kaliski's reports as inadmissible.  The Kaliski reports are

9    attached as exhibits to the declaration of Arthur Behiel, Brilliant's counsel.  Dr. Kaliski has not

10   sworn to the truth of the materials in his expert reports.  Unsworn expert reports are inadmissible,

11   and may not be used to support or oppose summary judgment.  *Shuffle Master, Inc. v. MP Games*

12   *LLC*, 553 F. Supp. 2d 1202, 1210 (D. Nev. 2008) ("[It] is well established, that an unsworn expert

13   report is inadmissible."); *Smith v. City of Oakland*, 2007 U.S. Dist. LEXIS 59941, at *9-10 (N.D.

14   Cal. Aug. 9, 2007) (striking expert report attached to counsel's declaration).  Accordingly, the Court

15   should disregard Dr. Kaliski's expert reports as inadmissible hearsay.

16   **VI.    CONCLUSION**

17   For the foregoing reasons, GuideTech respectfully requests that the Court adopt GuideTech's

18   claim constructions, deny Brilliant's motion for summary judgment of non-infringement, and grant

19   GuideTech's motion for summary judgment of assignor estoppel.

20   Dated:  April 22, 2011                    Respectfully submitted,

21                                             KILPATRICK TOWNSEND & STOCKTON LLP

22

23                                             By:  */s/ Byron R. Chin*

24                                                  BYRON R. CHIN
                                                   Attorneys for Defendants and Counterclaimants,
                                                   GUIDETECH, LLC
25   63288585 v1

---

26   [12] Nor do equitable considerations prevent the application of assignor estoppel.  *See Applied Materials*, 2005 U.S. Dist. LEXIS 40032, at *15; *see also Synopsys, Inc. v. Magma Design*
27   *Automation, Inc.*, 2007 U.S. Dist. LEXIS 50972, at *16 (N.D. Cal. Feb. 6, 2007) (holding party
     could not "conduct an 'end-run' around assignor estoppel by disguising its invalidity arguments as an
28   'unclean hands' defense.'") (citations omitted).

