IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRILLIANT INSTRUMENTS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>GUIDETECH, INC., and RONEN SIGURA,<br><br>    Defendants.<br>                                     /<br>AND ALL RELATED COUNTERCLAIMS<br>                                     / | No. C 09-5517 CW<br><br>ORDER ON CLAIM CONSTRUCTION, GRANTING BRILLIANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND DENYING AS MOOT GUIDETECH'S MOTION FOR SUMMARY ADJUDICATION ON THE ISSUE OF ASSIGNOR ESTOPPEL<br>(Docket Nos. 108 and 119) |

    Plaintiff and Counterclaim-Defendant Brilliant Instruments, Inc., and Defendant and Counter-Claimant GuideTech, Inc., seek construction of terms and phrases used in GuideTech's U.S. Patent Nos. 6,091,671 ('671 patent); 6,181,649 ('649 patent); and 6,226,231 ('231 patent) (collectively, Asserted Patents). In addition, Brilliant moves for summary judgment of non-infringement of the Asserted Patents and GuideTech's United States Patent Nos. 6,456,959 ('959 patent); 6,621,767 ('767 patent); 6,999,382 ('382 patent); and 7,203,610 ('610 patent). GuideTech opposes Brilliant's motion in part and cross-moves for summary adjudication that Brilliant is precluded, based on the doctrine of assignor estoppel, from asserting that the Asserted Patents are invalid. The matters were heard on June 2, 2011. Having considered oral argument and the papers submitted by the parties, the Court construes the terms and phrases as set forth below. In addition, the Court GRANTS Brilliant's motion for summary judgment of non-

infringement. Because the products at issue in this case do not infringe the Asserted Patents, Brilliant lacks standing to bring invalidity counterclaims and they are dismissed for lack of subject matter jurisdiction. GuideTech's cross-motion for summary adjudication on the issue of assignor estoppel is DENIED as moot.

BACKGROUND

According to their specifications, the patents-in-suit concern time interval analyzers (TIAs), which are testing instruments used in the semiconductor industry to detect timing errors in integrated circuits. These timing errors can present as anomalies in the amplitude, phase or pulsewidth of signals produced by the integrated circuit. Some testing instruments, such as counters or oscilloscopes, only detect timing errors. TIAs, however, "can monitor frequency changes and frequency deviation over time." See, e.g., '671 patent, 2:17-18. In this way, TIAs can assist a user in detecting a timing error and determining its source.

In 1998, Shalom Kattan founded Guide Technology, Inc., which is not the same entity as GuideTech. He invented the technology claimed by the patents-in-suit, which he assigned to Guide. In 2004, Kattan left his employment with Guide, but remained on its board of directors. That same year, Kattan established Brilliant. In 2005, Kattan left his position on Guide's board. On May 23, 2008, Guide sold its assets, which included the patents-in-suit, to Ronen Sigura, who allegedly founded GuideTech.

Brilliant initiated this lawsuit on November 20, 2009, seeking declarations that its products (hereinafter, Accused Products), such as the BI200 and BI220, do not infringe the Asserted Patents or the '671, '699 and '231 patents. GuideTech counterclaimed,

2

asserting that Brilliant's products infringe the Asserted Patents. In response, Brilliant counterclaimed for a judgment that the Asserted Patents are invalid. On June 3, 2010, Brilliant amended its complaint to add Sigura as a Defendant, charging him with intentional interference with prospective economic advantage, intentional interference with contractual relations and violation of California's Unfair Competition Law (UCL), Cal. Bus. Code §§ 17200, et seq.

## DISCUSSION

I.  Claim Construction

   A.  Legal Standard

The construction of a patent is a matter of law for the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Accordingly, in construing disputed terms, the Court first looks to the words of the claims. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Generally, the Court ascribes the words of a claim their ordinary and customary meaning. Id. The Federal Circuit instructs that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1313. Other claims of the patent in question can also assist in determining the meaning of a

3

claim term. Id. at 1314. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." Id.

The Federal Circuit also instructs that claims "must be read in view of the specification, of which they are a part." Id. at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). The specification must contain a description of the invention that is clear and complete enough to enable those of ordinary skill in the art to make and use it, and thus the specification is "always highly relevant" to the Court's claim construction analysis. Vitronics, 90 F.3d at 1582. "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." Id. In some cases, the specification may reveal that the patentee has given a special definition to a claim term that differs from its ordinary meaning; in such cases, "the inventor's lexicography controls." Phillips, 415 F.3d at 1316. The specification also may reveal the patentee's intentional disclaimer or disavowal of claim scope. "In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." Id. However, claims are not limited to the preferred embodiment described in the specification. See SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc, plurality opinion).

While emphasizing the importance of intrinsic evidence in claim construction, the Federal Circuit has authorized courts to rely on extrinsic evidence, which consists of "all evidence

4

external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317 (quoting Markman, 52 F.3d at 980). While extrinsic evidence may be useful to the Court, it is less significant than intrinsic evidence in determining the legally operative meaning of claim language. Phillips, 415 F.3d at 1317-18; see also C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004). Furthermore, extrinsic evidence is unlikely to lead to a reliable interpretation of claim language unless considered in the context of the intrinsic evidence. Phillips, 415 F.3d at 1319.

B.   Analysis

Brilliant and GuideTech agree that certain terms should be construed as follows: "current boost circuit" as "a circuit that increases current flow to or from an electrical component," "measurement circuit" as "a circuit that performs a measurement," "processor circuit" as "a circuit that can perform logical arithmetic operations," "shunt" as "a current switch," and "current sink" as "a current source that draws an electrical current."[1] Brilliant and GuideTech also agree that "time interval analyzer" is not a claim limitation. Based on the parties' agreement, the Court adopts Brilliant and GuideTech's proposed constructions.

Brilliant and GuideTech dispute the meaning of five terms and phrases.

---

[1] Brilliant and GuideTech initially disputed the meaning of "current sink." However, in its claim construction brief, GuideTech agreed with Brilliant's proposed construction.

5

1. "signal channel"

The term "signal channel" appears in the '231 patent. There, in claim 1, the term is used in the following context: "A time interval analyzer for measuring time intervals between signal events, said analyzer comprising: a signal channel that receives an input signal; . . . ." '231 patent, 16:30-33. Although the term does not appear in the '671 or '649 patents, Brilliant and GuideTech agree that elements 12 and 14 in Figure 1 of both of these patents are signal channels.

Brilliant defines a signal channel to be "a physical collection of related components capable of acting independently to perform a useful function on a signal." GuideTech defines it to be "an electrical circuit that includes a signal path for transmitting electrical signals and includes one or more parallel measurement circuits."

Based on the parties' representations and concessions at the claim construction hearing, the Court construes a signal channel to be "an electrical circuit that includes a signal path for transmitting electrical signals."

2. "defined within a signal channel"

The phrase "defined within a signal channel" does not appear in any of the Asserted Patents. However, the abstract of the '231 patent states, "A time interval analyzer includes a signal channel that receives an input signal. A plurality of measurement circuits are defined within the signal channel in parallel with each other." '231 patent, Abstract. Claim 1 of the '231 patent discloses, "A time interval analyzer for measuring time intervals between signal events, said analyzer comprising: a signal channel that receives an

6

input signal; a plurality of measurement circuits defined within said signal channel in parallel with each other . . . ." Id. 16:30-35.

Brilliant proposes the following construction: "a component of only one signal channel." GuideTech contends that the Court need not construe this phrase. In the alternative, GuideTech argues, the phrase should be defined to mean "present in a signal channel."

The Court finds that the phrase must be construed and that Brilliant's construction is more accurate because it captures the notion that measurement circuits are contained within a particular signal channel. This understanding is supported by the claim language and Figure 1, which shows that measurement circuits, comprised of a comparator, multiplexer and interpolator, are located within a given signal channel.

GuideTech contends that Brilliant's construction contradicts the specification, which describes certain embodiments that have a measurement circuit that relies on a continuous time counter and a continuous event counter used by other measurement circuits. See '231 patent, 3:54-59. However, that a measurement circuit may rely on common counters does not mean that the circuit is not contained within a particular signal channel. GuideTech also points to one embodiment in which signals might cross channels so that certain measurements can be made. This cross-channel function, however, is not inconsistent with a measurement circuit being contained within a particular signal channel.

GuideTech's definition is too broad and reads out the "defined within" limitation. The phrase "present in" captures an embodiment that has a measurement circuit that is present in more than one

7

channel, which is not supported by the claim language, the specification or Figure 1.

Brilliant's proposed construction is not an adjectival phrase, like the phrase at issue. Accordingly, the Court construes this phrase to mean "contained within a signal channel."

       3.   "current source"

The term "current source" appears in the context of the interpolator element claimed by the Asserted Patents. Brilliant contends that a current source should be defined to be "an active circuit that provides an electrical current that is independent of the voltage across the circuit." GuideTech proposes the following definition: "an electrical component that provides electrical current."

Brilliant offers no evidence to support the additional limitation of voltage independence. It is true that extrinsic evidence indicates that current sources are not voltage sources and that theoretical, "perfect" current sources provide a constant current, irrespective of the voltage across a circuit. See, e.g., Behiel Decl., Ex. O, at 9 ("A perfect current source is a two-terminal black box that maintains a constant current through the external circuit, regardless of load resistance or applied voltage."). However, the same evidence states that, in practice, "current sources . . . have a limit to the voltage they can provide . . . , and in addition they do not provide absolutely constant output current." Id. Thus, while a current source will provide current, regardless of the voltage across the circuit, the current may be affected by the voltage, contrary to what Brilliant's construction suggests. Nothing in the Asserted Patents indicates

8

that a current source provides current at a constant rate.

Brilliant contends that GuideTech's proposed definition is inaccurate because it permits a battery, which is a voltage source, to be regarded as a current source. This is incorrect. Under GuideTech's construction, a current source provides current. A battery provides voltage, which produces current. Providing current and producing current are not the same concepts.

Accordingly, the Court adopts GuideTech's definition and construes "current source" to refer to "an electrical component that provides electrical current."

4. "operatively disposed in parallel"

Like "current source," the phrase "operatively disposed in parallel" is used in the context of the interpolators claimed by the Asserted Patents. The pertinent claim language discloses an interpolator that is comprised of, among other things, "a capacitor; a shunt; wherein said shunt and said capacitor are operatively disposed in parallel with respect to said first current circuit." '231 patent, 18:41-45.

Brilliant and GuideTech agree that the phrase discloses alternative paths for current. They dispute, however, whether the phrase requires a common destination and whether a change in voltage affects voltage in the various paths. Brilliant advances the following construction: "forming alternative signal paths between the same source and destination, wherein the same voltage change occurs across both paths." Brilliant points to the ordinary meaning of "parallel" in the field of the Asserted Patents, which is "an arrangement of the components, as resistances, of a circuit in such a way that all positive terminals are connected to one

9

point and all negative terminals are connected to a second point, the same voltage being applied to each component." <u>Webster's Encyclopedic Unabridged Dictionary</u> 1407 (2001). GuideTech's proposal omits any discussion of a common destination or voltage, arguing that the phrase should be construed to mean "arranged in a manner capable of forming alternative paths of current such that current can flow across one or the other path." GuideTech notes that the modifier "operatively" indicates that the shunt and capacitor are not actually "disposed in parallel," but rather "operate as though they are parallel." GuideTech's Cl. Constr. Br. at 12:10. <u>See</u> <u>Innova/Pure Water</u>, 381 F.3d at 1118 ("In the absence of modifiers, general descriptive terms are typically construed as having their full meaning.").

    Figure 4 and the specification do not support Brilliant's additional limitation that requires the paths to terminate at the same destination. Nor do Figure 4 and the specification indicate that the "same voltage change occurs across both paths." Figure 4 shows the shunt and capacitor to be on alternate paths of current. However, these alternate paths do not terminate at the same destination, nor do they have the same voltage running across them. <u>See</u> Kaliski Decl., Ex. B ¶ 103 (Brilliant's infringement expert stating that "the voltage across the shunt is not necessarily the same as the voltage across capacitor"). Nevertheless, Brilliant insists that any "change in voltage across one path will be experienced by each element." Brilliant's Cl. Constr. Br. at 13:17. No evidence supports this view. Brilliant points to language in the specification indicating that, as the capacitor discharges, "the voltage level at pin 2 of diode bridge 124 drops."

10

'649 patent, 9:51-52. However, there is no evidence that pin 2 of the diode bridge is "operatively disposed in parallel" in the same manner as the shunt and capacitor.[2]

Brilliant contends that GuideTech's construction, which does not mention voltage level changes, fails to account for the "parallel" limitation in the claim language. This is incorrect. GuideTech's proposal accounts for "parallel" by disclosing alternative paths for current and indicating the location of the shunt and capacitor.

Accordingly, the Court construes the phrase "operatively disposed in parallel" as "arranged in a manner capable of forming alternative paths of current such that current can flow across one or the other path."

### 5. "parallel outputs"

Brilliant and GuideTech's dispute over defining this term arises from their disagreement over how to construe "parallel." Brilliant argues that this term should be defined to mean "alternative output signal paths to a common destination, wherein the same voltage changes occur across both paths." GuideTech proposes the following definition: "outputs that are arranged such that a current path divides between the outputs."

For the reasons stated above, the Court adopts GuideTech's definition. Accordingly, "parallel outputs" is construed to mean "outputs that are arranged such that a current path divides between the outputs."

---

[2] Indeed, Figure 4 shows that pin 2 is located before the alternate paths leading to the shunt and capacitor branch off.

11

II. Motions for Summary Judgment and Summary Adjudication

    A. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." Id.

B. Brilliant's Motion for Summary Judgment of Non-Infringement

Brilliant seeks summary judgment that the Accused Products do not infringe the patents-in-suit. GuideTech opposes Brilliant's motion only insofar as it concerns the Asserted Patents. GuideTech does not oppose Brilliant's motion to the extent it is directed at the '959, '767, '382 and '610 patents. Accordingly, Brilliant's motion is granted as to these patents.

With respect to the Asserted Patents, Brilliant asserts that GuideTech cannot prove literal infringement or infringement under the doctrine of equivalents. "To establish literal infringement, 'every limitation set forth in a claim must be found in an accused product, exactly.'" Becton, Dickinson & Co. v. Tyco Healthcare Group, LP, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (quoting Southwall

14

Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995)). "Thus, if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." Becton, 616 F.3d at 1253 (citation and editing and internal quotation marks omitted).

An accused product may also infringe under the doctrine of equivalents. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950). The doctrine generally applies where the differences between an element of the accused product and the asserted claim limitation are "insubstantial to one of ordinary skill in the art." Searfoss v. Pioneer Consol. Corp., 374 F.3d 1142, 1150 (Fed. Cir. 2004) (citation and internal quotation marks omitted). However, the doctrine may not be invoked, and summary judgment of non-infringement is appropriate, where the theory of equivalents "would entirely vitiate a particular claim element." Id. at 1150-51 (internal citations omitted).

### 1. '231 Patent

Brilliant contends that the Accused Products cannot infringe the '231 patent because they are not TIAs with "a plurality of measurement circuits defined within [a] signal channel," '231 patent, 16:33-34, or with "a processor circuit . . . configured to receive and compare . . . time signals from said measurement circuits to each other to determine a time interval," id., 40-48. Because Brilliant's first argument is dispositive, the Court need not consider its second.

Brilliant proffers evidence that the Accused Products have only one measurement circuit contained within each signal channel and, as a result, do not satisfy this limitation. See, e.g.,

Kaliski Reply Decl., Ex. A ¶ 18.

GuideTech does not offer evidence that each signal channel contains more than one measurement circuit. Instead, GuideTech notes that the Accused Products can perform a "one-channel-two-edge" function, which requires use of two "timetagging" circuits. GuideTech considers these circuits to be measurement circuits. Chin Decl., Ex. 10, at BI000858. GuideTech insists that a signal channel with only one measurement circuit would be useless because two measurements are required to determine an interval. West Decl. ¶ 10. These arguments are unavailing. Although the one-channel-two-edge function requires use of the Accused Products' two measurement circuits, it does not follow that both measurement circuits are contained within a single channel. Indeed, Dr. Burnell G. West, GuideTech's infringement expert, states that the BI200 has "at least two measurement circuits," which "are within either signal channel A or signal channel B as shown in Figure 2" of the BI200 Datasheet.[3] West Decl., Ex. 1, App'x D, at A2. He does not contend that the measurement circuits are contained within a given channel. Thus, there is not a genuine issue of material fact as to whether the Accused Products literally meet this limitation.

Nor is there a triable issue concerning infringement under the doctrine of equivalents. West contends that the "physical placement of accused measurement circuits is equivalent to being of only one signal channel because such placement performs substantially the same function . . . in substantially the same way

---

[3] West represents that the BI220 has a "substantially similar" configuration. West Decl., Ex. 1, App'x D, at A2.

. . . to achieve the same result." West Decl., Ex. 2 ¶ 13. Although this might be true, accepting this theory of equivalency would vitiate entirely the limitation that measurement circuits be contained within a single channel.

Accordingly, as a matter of law, the Accused Products do not infringe the '231 patent, either literally or under the doctrine of equivalents. Brilliant is entitled to summary judgment of non-infringement as to the '231 patent.

### 2. '671 Patent

Brilliant maintains that the Accused Products do not infringe the '671 patent because they do not practice a "first current circuit having a constant current source," '671 patent, 16:53, or a shunt and capacitor "operatively disposed in parallel with respect to said first current circuit," id., 16:62-63. Because Brilliant's second argument is dispositive, the Court need not consider the first.

Brilliant points to a schematic of the BI200 that West annotated during his deposition, which Brilliant contends shows the accused capacitor to be a part of the first current circuit. Thus, Brilliant argues, the capacitor cannot be "operatively disposed in parallel with respect to the first current circuit" because it is a part of that circuit. GuideTech does not dispute that West indicated that, in the BI200, the capacitor is part of the first current circuit.

As explained above, the Court construes "operatively disposed in parallel" to mean "arranged in a manner capable of forming alternative paths of current such that current can flow across one or the other path." West's representation that the capacitor is

17

part of the first current circuit indicates that the capacitor is not on an alternative path on which current flows from the first current circuit. Indeed, GuideTech's expert on Brilliant's invalidity contentions, Sassan Tabatabaei, confirms that the capacitor that the '671 patent claims is not part of the first current circuit, but rather on an "alternative path[] of current from the first current circuit." Tabatabaei Decl. ¶ 18.

West's testimony that the capacitor is part of the first current circuit precludes a finding of infringement, either literally or under the doctrine of equivalents. Accordingly, Brilliant is entitled to summary judgment of non-infringement of the '671 patent.

### 3. '649 Patent

Like the '671 patent, the '649 patent discloses an interpolator with a shunt and capacitor "operatively disposed in parallel with respect to said first current circuit." Thus, for the reasons stated above, Brilliant is entitled to summary judgment of non-infringement of the '649 patent.

## CONCLUSION

For the foregoing reasons, the Court construes the disputed claim language in the manner explained above and GRANTS Brilliant's motion for summary judgment of non-infringement (Docket No. 108). Because Brilliant's Accused Products do not infringe the Asserted Patents, it lacks standing to bring invalidity counterclaims and they are therefore dismissed for lack of subject matter jurisdiction. Accordingly, GuideTech's motion for summary adjudication on the issue of assignor estoppel is DENIED as moot (Docket No. 119). Brilliant's evidentiary objections are OVERRULED

as moot.

In their June 29, 2011 stipulation, the parties agreed that, if the Court were to grant Brilliant's motion for summary judgment of non-infringement, Brilliant would seek leave to dismiss its state law claims in this action so that they could be consolidated with GuideTech's claims in state court. In accordance with their agreement, within three days of the date of this Order, the parties shall file a stipulation seeking the dismissal without prejudice of Brilliant's remaining state law claims. <u>See</u> Fed. R. Civ. P. 41(a)(1)(A)(ii). Thereafter, judgment will enter accordingly, and the Clerk will be directed to close the file.

IT IS SO ORDERED.

Dated: 8/11/2011

CLAUDIA WILKEN
United States District Judge