IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRILLIANT INSTRUMENTS, INC., | No. C 09-5517 CW |
| Plaintiff, | ORDER GRANTING GUIDETECH, INC.'S MOTION FOR SUMMARY JUDGMENT ON ASSIGNOR ESTOPPEL |
| v. | |
| GUIDETECH, INC.; and RONEN SIGURA, an individual; | |
| Defendants. | (Re: Docket No. 119) |

AND ALL RELATED COUNTERCLAIMS

_____/

In this patent infringement case, Defendants GuideTech, Inc. and Ronen Sigura move for summary judgment on the issue of assignor estoppel.  Plaintiff Brilliant Instruments, Inc. (Brilliant) opposes.  Having considered the papers and arguments of counsel, the Court GRANTS GuideTech's motion.

BACKGROUND

In 1998, Shalom Kattan founded Guide Technology, Inc., the predecessor entity to GuideTech, which is in the business of manufacturing and selling precision time and frequency measurement instruments.  Docket No. 35 ¶ 3.  Kattan is the sole named inventor for the patents-in-suit, which he assigned to Guide Technology.  Chin Decl., Exs. 1-3, 12.  In 2004, Kattan left his employment with Guide Technology, but remained on its board of directors until 2005.  Chin Decl., Ex. 25 at 32:18-33:18.  Also in 2004, Kattan established Brilliant, a one-man company headed by Kattan himself.  Id. at 42:12-25; Chin Decl., Ex. 9; Docket No. 86

at 2.  Brilliant also manufactures and sells measurement instruments.  Docket No. 39 ¶ 4.  On May 23, 2008, Guide Technology sold its assets, including the patents-in-suit, to Ronen Sigura, who founded GuideTech.  Chin Decl., Ex. 24.

On November 20, 2009, Brilliant filed this action for declaratory relief, asserting that its accused products, including BI200 and BI220, do not infringe GuideTech's U.S. Patent Nos. 6,091,671 ('671 patent); 6,181,649 ('649 patent); 6,226,231 ('231 patent); 6,456,959; 6,621,767; 6,999,382; and 7,203,610.  These patents concern time interval analyzers, which are testing instruments used in the semiconductor industry to detect timing errors in integrated circuits.  GuideTech filed its answer and counterclaim, asserting that Brilliant's products infringe the '671, '649 and '231 patents.  Brilliant in turn filed its answer and counterclaim for declaratory judgment of invalidity of the '671, '659, and '231 patents.

In early 2011, Brilliant filed a motion for summary judgment of non-infringement and GuideTech filed a motion for summary adjudication on the issue of assignor estoppel.  The Court granted Brilliant's motion for summary judgment, finding Brilliant's products did not infringe the patents-in-suit.  See Docket No. 137.  Due to its finding of non-infringement, the Court denied GuideTech's motion for summary judgment as moot.  See id.  On October 4, 2011, GuideTech filed an appeal to the Federal Circuit from the order and judgment entered by the Court in favor of Brilliant.  Docket No. 166.  The Federal Circuit reversed and remanded the Court's summary judgment order, finding disputed issues as to whether Brilliant's products infringe the patents-in-

United States District Court
For the Northern District of California

suit under the doctrine of equivalents.  Brilliant Instruments, Inc. v. GuideTech, LLC, 707 F.3d 1342, 1348-49 (Fed. Cir. 2013). The Court now considers the merits of GuideTech's motion for summary judgment on the issue of assignor estoppel, which the Court previously denied as moot.

LEGAL STANDARD

Summary judgment is appropriate only where the moving party demonstrates there is no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case, as defined by the framework of the underlying substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party.  Id.

The moving party bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a disputed issue of material fact. Celotex, 477 U.S. at 323.  The burden then shifts to the non-moving party to show there are disputed issues of material fact. Id.  In opposing the motion, the non-moving party may not rely merely on allegations or denials of its pleadings, but must set forth "specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)).

The court must construe the evidence in the light most favorable to the non-moving party, making all reasonable inferences that can be drawn.  Matsushita Elec. Indus. Co., Ltd.

United States District Court
For the Northern District of California

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987).

DISCUSSION

GuideTech seeks to apply the doctrine of assignor estoppel to preclude Brilliant from challenging the validity of the patents-in-suit because Brilliant's founder is the inventor and assignor of those patents.  "Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity."  Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir. 1988); see also Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 349 (1924) ("As to the rest of the world, the patent may have no efficacy and create no right of monopoly; but the assignor cannot be heard to question the right of his assignee to exclude him from its use").  The rationale of this doctrine is primarily one of fairness and justice -- it would be inequitable to permit a party to sell a thing for value and then later assert that what was sold is worthless.  Id.  The doctrine acts as a bar to not only the assignor himself, but also other parties in privity with the assignor, such as a corporation founded by the assignor.  Id.[1]

---

[1] Brilliant does not contest that if assignor estoppel applies to Kattan, it would also apply to Brilliant.  However, whether another entity is barred by privity with the assignor is usually determined by balancing the equities, considering the closeness of the relationship.  See Shamrock Technologies, Inc. v. Med. Sterilization, Inc., 903 F.2d 789, 793 (Fed. Cir. 1990).

United States District Court
For the Northern District of California

In the wake of the United States Supreme Court's decision emphasizing the importance of patent validity challenges to protect the public domain,[2] the Federal Circuit recognized that the interests of preserving the rights of a patent assignee ought to be balanced against that important public interest.  See Diamond Scientific, 848 F.2d at 1225.  The Federal Circuit determined that, although assignor estoppel may no longer be a device of "automatic application," it should act as a bar to an assignor's invalidity challenge where the balancing of the equities requires its application.  Id.

Here, it is undisputed that Kattan assigned his interest in the patents-in-suit to GuideTech's predecessor.  GuideTech argues that because Kattan sold the patents-in-suit for value, it would be unjust to allow Kattan to now deprive GuideTech of the assets it received.  This intrinsic unfairness creates a "presumption that an estoppel will apply" on the equities scale.  Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 150 F.3d 1374, 1378 (Fed. Cir. 1998).  It is then up to Brilliant to provide countering evidence to tip the equities in its favor.  Brilliant asserts that there are disputed issues of material fact regarding the balancing of the equities.  If it turns out that GuideTech sued its founder's new company "without a reasonable basis for

_____

[2] See Lear, Inc. v. Adkins, 395 U.S. 653, 670 (1969)(abandoning the doctrine of licensee estoppel because the interest in preventing licensees from repudiating a promise because they later regretted the bargain was outweighed by the stronger public interest "in permitting full and free competition in the use of ideas which are in reality a part of the public domain").

1   doing so," Brilliant argues, then the equities will tip in

2   Brilliant's favor and assignor estoppel will not apply.  Docket

3   No. 126 at 14.

4        But the scope of the equities inquiry is not unbounded.  In

5   making their equities arguments, parties should look to the

6   rationale of assignor estoppel, which arises from the

7   determination that the injustice of permitting an assignor to

8   challenge a patent he represented was valid outweighs the

9   potential gains in the public domain.  6 Moy's Walker on Patents

10  § 17:43 (4th ed.); Diamond Scientific Co., 848 F.2d at 1224.  An

11  assignor seeking to overcome a presumption of assignor estoppel

12  should therefore focus on this rationale.  To be sure, even where

13  the inventor assigned the patent to another, there are a number of

14  exceptions where the equities would weigh against assignor

15  estoppel.  For example, the assignor could present evidence of

16  unfair dealings between the parties during assignment, such as

17  duress or fraud.[3]  Or perhaps the inventor assigned his rights

18  before the USPTO declared the patent valid and expressed serious

19  doubts to his employer/assignee that any resulting patent would be

20  valid.[4]  In some exceptional circumstances, the assignor may have

21  even reserved the right to challenge the validity of the patent or

22  the assignee may have expressly waived the right to assert

23

24

25       [3] See Shamrock Technologies, 903 F.2d at 794; Carroll Touch,
     Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1580 (Fed. Cir.
26   1993).

27       [4] Cf. BorgWarner, Inc. v. Honeywell Int'l, Inc., 747 F. Supp.
     2d 554, 560 (W.D.N.C. 2010).
28

United States District Court
For the Northern District of California

assignor estoppel.[5]  Or, in an increasingly common circumstance in the modern workplace, the inventor may be an employee who participated perfunctorily in the claims prosecution process, with very little say in drafting the scope of the claims, and the resulting patent may cover a far broader invention than the inventor intended to convey.[6]  All of these possibilities challenge the strength of the assumption that the assignor represented that what he sold was valuable.

Brilliant makes no such showing.  Brilliant never challenges the circumstances of the patent prosecution or assignment process. Brilliant only argues the possibility that GuideTech brought this suit against a former employee without justification, which is irrelevant in that it concerns the equities of the litigation itself, not the facts surrounding the assignment contract.

---

[5] Mentor Graphics, 150 F.3d at 1378.

[6] The assignor's belief in the worth of the patent as a basis for applying assignor estoppel is a meaningful factor only when the assignor actively participates in the prosecution of the patent.  In the usual course of assignment arrangements, the assignor/inventor has little say in the decision to file the patent or in later determining the scope of the claims.  His employer's patent attorneys typically perform these activities . . . [and] [t]he application usually goes through many amendments, narrowing the claim specifications before final approval or rejection.

Patricia Stanford, "Diamond Scientific Co. v. Ambico, Inc.: Enforcing Patent Assignor Estoppel," 26 Hous. L. Rev. 761, 772-73 (1989).  See also Diamond Scientific Co., 848 F.2d at 1225 (noting that the inventor/assignor "apparently participated actively in the patent application process, including drafting the initial version of the claims and consulting on their revision" and holding that assignor estoppel applied).

7

United States District Court
For the Northern District of California

Brilliant fails to present evidence raising a disputed issue of material fact.  Because GuideTech's evidence of a valid assignment by Kattan remains uncontradicted, the balancing of the equities tips in favor of imposing assignor estoppel and Brilliant therefore cannot challenge validity of the patents in question.

As noted by Brilliant, however, the effect of assignor estoppel is not absolute.  Although Brilliant cannot invalidate the patent, it can assert its "right to make use of the prior art invention of an expired patent, which anticipates that of the assigned patent." Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 257 (1945).  In other words, Brilliant cannot be held liable for infringement of portions of the patented invention that are in the public domain.  Id.  The estopped party may still defend against infringement by advocating for a narrow claim construction or demonstrating that the accused devices are within the prior art and therefore do not infringe.  Mentor Graphics, 150 F.3d at 1379. Brilliant is free to exercise these rights.

CONCLUSION

The Court GRANTS GuideTech's summary judgment motion and holds that assignor estoppel bars Brilliant's invalidity claim.

Trial for the remainder of the action shall take place from March 31, 2014 through April 4, 2014.

IT IS SO ORDERED.

Dated:  2/12/2014

CLAUDIA WILKEN
United States District Judge

8