1   RICHARD SWOPE, CA Bar No. 233200
    rswope@kaoandswope.com
2   CHRIS KAO, CA Bar No. 227086
    ckao@kaoandswope.com
3   KAO & SWOPE LLP
    268 Bush Street, #4127
4   San Francisco, CA 94104
    Tel. 415.539.0996
5   Fax. 866.267.0243
6
7   Attorneys for Plaintiff
    BRILLIANT INSTRUMENTS, INC.
8
9                   UNITED STATES DISTRICT COURT
10
11             FOR THE NORTHERN DISTRICT OF CALIFORNIA
12                        OAKLAND DIVISION
13  BRILLIANT INSTRUMENTS, INC.          Case No. 09-05517 CW
14              Plaintiff,                PLAINTIFF BRILLIANT
                                          INSTRUMENTS, INC.'S NOTICE OF
15       vs.                              MOTIONS AND MOTIONS IN
                                          LIMINE (NOS. 1 – 12)
16  GUIDETECH, INC.,
                                          Date:    March 19, 2014
17              Defendant.                Time:    2:00 PM
                                          Room:    Courtroom 2, 4th Floor
18                                        Judge:   Hon. Claudia Wilken
19
20
21
22
23
24
25
26
27
28

1

2

## <u>TABLE OF CONTENTS</u>

I.    MOTION IN LIMINE NO. 1: TO PRECLUDE DR. WEST FROM TESTIFYING THAT THE BRILLIANT DEVICES CONTAIN A PROCESSOR CIRCUIT CONFIGURED TO RECEIVE AND COMPARE SAID TIME SIGNALS…TO DETERMINE A TIME INTERVAL" OR ITS EQUIVALENT. ................................................................................ 2

II.   MOTION IN LIMINE NO. 2: TO EXCLUDE EVIDENCE REGARDING A REASONABLE ROYALTY CLAIM. ............................................................................... 4

    A.    Guidetech Never Disclosed A Computation Of Reasonable Royalty Damages As Required To In Its Rule 26(a) Disclosures........................................................................ 4

    B.    Guidetech's Discovery Responses Failed To Provide Its "Reasonable Royalty Damages"With Required Specificity. ................................................................................ 5

    C.    Guidetech Waived Its Right To Receive "At Least A Reasonable Royalty." ......... 5

    D.    Guidetech's Never-Disclosed Evidence Of Reasonable Royalty Damages Must Be Excluded Under Rule 37(C).............................................................................................. 6

    E.    Conclusion ..................................................................................................................... 7

III.  MOTION IN LIMINE NO. 3: TO EXCLUDE EVIDENCE OF A LOST PROFITS CLAIM. ....................................................................................................................... 7

    A.    Guidetech's Evidentiary Failures............................................................................... 7

    B.    The Totality Of Guidetech's Evidence Fails To Meet Any One Of The Four Panduit Factors.................................................................................................................. 8

    C.    Guidetech Should Not Be Allowed To Present Any Undisclosed Damages Theory For The First Time At Trial. ............................................................................................... 10

    D.    Conclusion ..................................................................................................................... 11

IV.   MOTION IN LIMINE NO. 4: TO EXCLUDE EVIDENCE OF DEMAND FOR ANY OF GUIDETECH'S OWN PRODUCTS ALLEGEDLY COVERED BY THE PATENTS-IN-SUIT. 11

V.    MOTION IN LIMINE NO. 5: TO EXCLUDE EVIDENCE REGARDING THE ABSENCE OF NONINFRINGING SUBSTITUTES. ............................................................. 12

VI.   MOTION IN LIMINE NO. 6: TO EXCLUDE EVIDENCE THAT GUIDETECH HAS THE MANUFACTURING AND MARKETING CAPACITY TO EXPLOIT THE DEMAND FOR PRODUCTS EMBODYING THE PATENTS-IN-SUIT. ............................................. 13

VII.  MOTION IN LIMINE NO. 7: TO EXCLUDE EVIDENCE OF THE AMOUNT OF PROFIT IT WOULD HAVE MADE, BUT-FOR BRILLIANT'S "INFRINGING SALES". 14

VIII. MOTION IN LIMINE NO. 8: TO EXCLUDE EVIDENCE THAT THE MARKET IS A TWO-SUPPLIER MARKET............................................................................................ 17

IX.   MOTION IN LIMINE NO. 11: TO EXCLUDE ANY EVIDENCE REGARDING SASSAN TABATABAEI AS AN EXPERT WITNESS. ....................................................... 18

X.    MOTION IN LIMINE NO. 10: TO EXCLUDE EVIDENCE RELATING TO INJUNCTIVE RELIEF................................................................................................................. 19

    A.    Insufficient Evidence of Injunction ........................................................................ 19

    B.    Question for the Court, Not the Jury........................................................................ 20

C.       Confusion of Issues .............................................................................. 20
D.       Conclusion ............................................................................................ 21
XI.       MOTION IN LIMINE NO. 11: TO EXCLUDE ANY EVIDENCE OF PENDING OR
PRIOR PROCEEDINGS BETWEEN PARTIES. .................................................. 21

XII.       MOTION IN LIMINE NO. 12: TO EXCLUDE DOCUMENTS PRODUCED AFTER
FEBRUARY 19, 2014. ................................................................................... 22

A.       Document Dump Made Available February 26, 2014 ........................................... 23
B.       Un-Bates labeled "Bill of Goods" Documents Produced For First Time on
3/3/2014. ................................................................................................... 24
C.       Un-Bates labeled Documents Created by Dr. West And Produced For First Time
on 3/3/2014. ............................................................................................... 25

1

## TABLE OF AUTHORITIES

2

## CASES

3  *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630 (7th Cir. 2001) .............................................. 1

4  *Apple, Inc. v. Samsung Elecs. Co.,* 2013 U.S. Dist. LEXIS 162863 (N.D. Cal. 2013) ........................................................................................................... *10*

5  *Boston Scientific Corp. v. Johnson & Johnson*, 550 F.Supp.2d 1102 (N.D. Cal. 2008) ................................................................................................................. 5

6

7  *Calico Brand, Inc. v. Ameritek Imps.*, Inc., 527 Fed. Appx. 987 (Fed. Cir. 2013) ....................................................................................................... 9, 10

8  *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220-21 (N.D. Cal. 2003) ........................................................................................... 5

9  *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535 (Fed. Cir. 1995) ................ 15, 17

10  *Computer Assoc. Int'l, Inc. v. American Fundware, Inc.,* 831 F. Supp. 1516 (D. Colo. 1993) ....................................................................................................... 20

11  *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993) ................................................ 2

12  *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140 (N.D. Cal. 2003) ............................. 9

    *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............................................................ 19

13  *EZ Dock, Inc. v. Schafer Sys.*, 2003 U.S. Dist. LEXIS 3634 (D. Minn. 2003) ........................ 18

14  *Federal Savings & Loan Ins. Corp. v. First Nat. Bank, Liberty, Mo.*, 3 F.R.D. 487, 488 (W.D. Mo. 1944) ........................................................................................ 1

15  *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) ........................................................................................................ 9, 13, 14, 15

16  *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136 (Fed. Cir. 1991) ....................................... 16, 17

17  *Keg Techs., Inc. v. Laimer*, 436 F.Supp. 2d 1364 (N.D. Ga. 2006) .......................................... 6

18  *Kirkland & Ellis v. CMI Corp.*, 1999 WL 92257 (N.D. Ill. 1999) ........................................... 6

    *Lindermann v. Amer. Hoist.*, 895 F.2d 1403 (Fed. Cir. 1990) ................................................... 6

19  *Linear Tech. Corp. v. Micrel, Inc.*, 2006 U.S. Dist. LEXIS 96860 (N.D. Cal. 2006) ............................................................................................................... 9, 15

20  *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119 (Fed. Cir. 2003) ...................................... 18

21  *Old Chief v. United States*, 519 U.S. 172, 179 (1997) .............................................................. 1

22  *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) ................................................................................................................... 9

23  *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269 (Fed. Cir. 2011) .................................................................................. 18

24  *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F. 2d 1161 (Fed. Cir.1991) .................................................................................................... 9

25

26  *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989) .............................. 9

    *Subotincic v. 1274274 Ontario Inc.*, 2013 U.S. Dist. LEXIS 110726 (C.D. Cal. 2013) ............................................................................................................. 10

27

28  *Synthes USA, LLC v. Spinal Kinetics, Inc.,* 2011 U.S. Dist. LEXIS 93093 (N.D. Cal. 2011) ............................................................................................................. 9

*The Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443 (9th Cir. 1994)....................... 1

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540 (Fed. Cir. 1991) .................................. 10

*United States Football League v. National Football League,* No. 84-7484-
    PKL, 1986 WL 7012 (S.D.N.Y. 1986) ............................................................................ 20

*U.S. v. Layton,* 767 F.2d 549 (9th Cir. 1985) ......................................................................... 1

*Use Techno Corp. v. Kenko USA, Inc.,* 2007 WL 4169487 (N.D. Cal. 2007).......................... 5

*Vnus Med. Techs., Inc. v. Diomed Holdings, Inc.,* 2007 U.S. Dist. LEXIS
    80863 (N.D. Cal. 2007)..................................................................................................... 9

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101 (9th Cir. 2001) ....................... 2

## **STATUTES**

Fed. R. Civ. P. 26 ...................................................................................................... *passim*

Fed. R. Civ. R. 37 ....................................................................................................... *passim*

Fed. R. Evid 401 ......................................................................................................... *passim*

Fed. R. Evid 402 ......................................................................................................... *passim*

Fed. R. Evid 403 ......................................................................................................... *passim*

Fed. R. Evid 702 ......................................................................................................... *passim*

1

2

**NOTICE OF MOTIONS AND MOTIONS IN LIMINE**

PLEASE TAKE NOTICE that on March 19, 2014 at 2:00 PM, before the Honorable Claudia

3

Wilken in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, California, or as soon thereafter as

4

the Court shall order, Plaintiff Brilliant Instruments, Inc. ("Brilliant") will and hereby does move *in*

5

*limine* for the relief set forth herein.

6

**LEGAL STANDARD**

7

Courts grant motions *in limine* to exclude evidence that is irrelevant or unfairly prejudicial at

8

trial.  Evidence is relevant only if has "any tendency to make the existence of any fact that is of

9

consequence to the determination of the action more or less probable than it would be without the

10

evidence." Fed. R. Evid. 401.  Thus, to be relevant, the offered evidence must have a logical

11

tendency to prove or disprove a fact, and must relate to a fact "of consequence" to the case.  *See*

12

*Federal Savings & Loan Ins. Corp. v. First Nat. Bank, Liberty, Mo.*, 3 F.R.D. 487, 488 (W.D. Mo.

13

1944); *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 638 (7th Cir. 2001).  Moreover, the Court,

14

in its discretion, is authorized to preclude evidence, no matter how relevant, if its probative value is

15

substantially outweighed by the risk of unfair prejudice, confusion of the issues, or the risk that such

16

evidence will mislead the jury.  Fed. R. Evid. 403; *see also Old Chief v. United States*, 519 U.S.

17

172, 179 (1997); *The Monotype Corp. PLC v. Int'l Typeface Corp.,* 43 F.3d 443, 450 (9th Cir.

18

1994); *U.S. v. Layton,* 767 F.2d 549, 553 (9th Cir. 1985).

19

Further, documents, testimony or other evidence that a party was obligated to produce

20

during discovery, but failed to do so, should be excluded.  Under Rule 37(c)(1), "a party who fails

21

to provide information or identify a witness as required by Rule 26(a) or (e)…is not allowed to use

22

that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the

23

failure was substantially justified or is harmless."  Federal Rule of Civil Procedure 26(e), in turn,

24

provides that a party who has responded to an interrogatory, request for production, or request for

25

admission must "supplement or correct its disclosure or response . . . in a timely manner if the party

26

learns that in some material respect the disclosure or response is incomplete or incorrect . . . ."  Rule

27

37(c)'s remedy of exclusion is an automatic, *mandatory*, and self-executing sanction to protect

28

against discovery abuse  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001).

## I. MOTION IN LIMINE NO. 1: TO PRECLUDE DR. WEST FROM TESTIFYING THAT THE BRILLIANT DEVICES CONTAIN A PROCESSOR CIRCUIT CONFIGURED TO RECEIVE AND COMPARE SAID TIME SIGNALS…TO DETERMINE A TIME INTERVAL" OR ITS EQUIVALENT.

Brilliant moves to preclude GuideTech from presenting expert testimony through Burnell West ("West") that the accused Brilliant devices contain "a processor circuit configured to receive and compare said time signals…to determine a time interval" or its equivalent.  Federal Rule of Civil Procedure 26 requires experts to submit "a written report" which "contain[s] a complete statement of all opinions to be expressed" and "the basis and reasons therefore." Fed. R. Civ. P. 26(a)(2)(B). "[A] party will not ordinarily be permitted to use on direct examination any expert testimony" not disclosed in a "detailed and compete written report, stating the testimony the witness is expected to present during direct examination." Advisory Committee Notes to the 1993 Amendments; *see also*, Fed. R. Civ. R. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")  West's "expert report" was either so unreliable that it fails to comport with the reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993); ***so unforthcoming that it constituted a violation of Rule 26 that triggers preclusion pursuant to R. 37(c)(1)***; or both unreliable and unforthcoming.

West prepared an "expert report" for GuideTech in which he directly contradicted himself. First he testified that the claimed processor is on the BI 200.

> "Additionally, the section titled, "How Does it Work?" for example, discloses that "[f]rom this timetag data, the instrument calculates the measured results."  This disclosure *represents* that the *BI200 includes a processor* that is performing time interval calculations.  A processor *would be needed* to determine measurement results for timetag data.

In the next sentence, he testified that the processor circuit is "partly in the FPGA" of the BI200 and BI220, and partly on the computer of the user:

> The BI220 datasheet (BI000871) discloses identical or substantially similar information. […] The claimed processor is located partly in the FPGA and the balance ***can be located on a computer of a user*** of the BI200 or the BI220. […]

Later in his report, West contradicted himself yet again in testifying that the processor was on a computer of the user:

> The accused products and/or computer include software to configure the processor circuit ***of the computer*** to perform time interval measurement calculations as discussed above."

West Expert Report, A5-A6 (emphasis added).  Apparently West had no idea what he was talking about and/or he was being intentionally deceptive in an attempt not to disclose his actual position to Brilliant during discovery.

When questioned about his contradictions regarding the location of the claimed processor, he admitted not only that he could not find it in the specific design, but that he didn't even bother to look.  Despite testifying that his expert report was based upon an "analysis of the Verilog code modules " (West Expert Report, A6), West admitted that he did not spend time investigating the software because it would require a lot of hours:

> Q.  – on the PC.  Why did you say you inferred that?
> A.  Because ***I didn't take the time to look*** in to the PC to see ***exactly what the code said***.  I thought that that would be a rabbit hole I could spend a lot of hours in and not find the actual moment when the – when the code subtracted.

West Deposition, 267:3-9 (emphasis added).

West had plenty of time and opportunity to examine Brilliant's source code and identify the claimed processor on the accused Brilliant devices.   However, West chose not to because it would take "a lot of hours."  GuideTech simply failed to meet its disclosure requirements pursuant to Rule 26.  Any attempt to testify trial regarding a "processor circuit compared to receive and compare said time signals…to determine a time interval" on a Brilliant device would be new evidence presented for the first time, outside the scope of West's report, and extremely prejudicial to

Brilliant.  The proper inference from GuideTech's failure to abide by Rule 26 is that there is no "processor circuit" and Rule 37(c)(1) operates as a sanction against any new testimony.

Accordingly, Brilliant requests that West be precluded from testifying that the accused Brilliant devices contain "a processor circuit configured to receive and compare said time signals…to determine a time interval" or its equivalent.

## II.   MOTION IN LIMINE NO. 2: TO EXCLUDE EVIDENCE REGARDING A REASONABLE ROYALTY CLAIM.

During discovery, GuideTech chose not to make the requisite disclosures for a reasonable royalty claim. Rather, GuideTech consistently limited its damages claim to lost profits, perhaps as a tactical election to prevent an alternate, and much lower, damages number from going to the jury. Because GuideTech failed to comply with its duty under Rule 26 to disclose this information at the outset and during discovery, all evidence regarding a reasonable royalty claim should be excluded under Rule 37(c).

### A.   Guidetech Never Disclosed A Computation Of Reasonable Royalty Damages As Required To In Its Rule 26(a) Disclosures.

Under Rule 26(a)(1), a plaintiff has an affirmative duty to disclose, before discovery has even begun, "a computation of each category of damages claimed."  Fed. R. Civ. P. 26(a)(1)(A)(iii). This rule imposes two requirements: (1) disclosure of each *category* of damages; and (2) disclosure of a *computation* for each category of damages.

In its Initial and Supplemental Disclosures, GuideTech chose not to provide a computation of reasonable royalty damages and merely incorporated by reference the deposition testimony of Ronen Sigura, Oren Rajuan, and Shalom Kattan as well as "damages calculations set forth in its initial and supplemental responses to Interrogatory No. 10."  None of these documents provided calculations or even a preliminary estimate of reasonable royalty damages.

At best, GuideTech simply repeated the language of the patent damages statute, "damages adequate to compensate infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court" and disclosed that it was seeking "enhanced damages, including a trebling of any damages award."

(Initial Disclosures, 7:12-19.)  These statements are insufficient to disclose any computation or category of damages.  *See, e.g. Use Techno Corp. v. Kenko USA, Inc.,* 2007 WL 4169487 at *3-4 (N.D. Cal. 2007) (granting defendant's motion for summary judgment on damages because "it believes it will at least be entitled to a reasonable royalty due to [defendant's] sales of infringing products" was an insufficient calculation); *City and County of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. 219, 220-21 (N.D. Cal. 2003) (finding that while "category" of damages is not defined, it includes more than broad statements about damages).  Indeed, the purpose of Rule 26(a)(1)(iii) is to require a party to disclose its damages with specificity to enable the defendant to understand the contours of potential exposure and make informed decisions as to settlement and discovery.  *City & County of San Francisco,* 218 F.R.D. at 220-221.

> **B.      Guidetech's Discovery Responses Failed To Provide Its
> "Reasonable Royalty Damages" With Required Specificity.**

Brilliant propounded Interrogatory No. 10 to GuideTech directed to GuideTech's bases for damages:

> [d]escribe in detail the basis for your determination of the amount of damage
> GuideTech contends it is entitled to recover from Brilliant in this action, including
> the method and/or theory under which you determined such damages, and the data
> and calculations used to determine the amount of such damages…

GuideTech responded that it "will be seeking damages in the form of lost profits…or at a minimum, a reasonable royalty."  (Response to Interrogatory No. 10.)  GuideTech then provided a purported preliminary lost profits analysis, and claimed that it also "suffered damage to its goodwill and reputation."  It did ***not*** include any computation analysis for reasonable royalties.  GuideTech's supplemental responses never added to any purported claim of reasonable royalties.

> **C.      Guidetech Waived Its Right To Receive "At Least A Reasonable
> Royalty."**

GuideTech waived its right to a reasonable royalty because it failed to properly disclose any evidence or calculations in support.  The right to a reasonable royalty may be waived like any other right.  In *Boston Scientific Corp. v. Johnson & Johnson*, 550 F.Supp.2d 1102, 1120 (N.D. Cal. 2008) the court held that a patentee waived its right to seek reasonable royalty damages by choosing not to put on any evidence at trial of what a reasonable royalty would be.  In *Boston Scientific*

*Corp.*, Judge Illston explained: "[w]here the record lacks any evidence of a reasonable royalty rate, the Federal Circuit has approved of awarding 'zero damages' because '[t]he statute [35 U.S.C. § 284] requires the award of reasonable royalty but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.'" *Id.* (*citing Lindermann v. Amer. Hoist.,* 895 F.2d 1403, 1406 (Fed. Cir. 1990)); *see also Keg Techs., Inc. v. Laimer*, 436 F.Supp. 2d 1364, 1370 (N.D. Ga. 2006) (refusing to award reasonable royalty damages because it "would be an exercise in arbitrary speculation"); *Kirkland & Ellis v. CMI Corp.*, 1999 WL 92257 at \*5 (N.D. Ill. 1999) (finding plaintiff had "waived [its] right to seek reasonable royalties" because it "raised the reasonable royalty issue so late that it would be impossible for [the defendant] to respond to the issue").

Here, GuideTech never disclosed any factual evidence regarding a reasonable royalty and thus, it waived its right to recoup reasonable royalty damages.

### D. Guidetech's Never-Disclosed Evidence Of Reasonable Royalty Damages Must Be Excluded Under Rule 37(C)

GuideTech's failure to disclose evidence regarding "reasonable royalty" pursuant to Rule 26(a) and (e) automatically triggers Rule 37(c)'s preclusion remedy Thus, any information pertaining to its reasonable royalty claim cannot be used at trial unless the failure to provide it was either substantially justified or harmless.  It was neither.

GuideTech's failure to disclose its intent to seek reasonable royalties was not substantially justified.  The potential for a reasonable royalty theory of damages was always obvious, as it is explicitly described in the statute on damages for patent infringement.  35 U.S.C. 284.  GuideTech's failure to disclose the requisite calculations and evidence, despite having numerous opportunities to do so, was the result of a conscious decision to focus on lost profit damages and thus, its exclusion was not substantially justified.

Further, GuideTech's decision to withhold this information was not harmless.  Because GuideTech never timely disclosed any evidence, calculation, expert opinion or even a theory of recovery based on reasonable royalty, despite having the burden of proof on the matter at trial,

Brilliant never focused its discovery efforts on this topic. Allowing GuideTech to pursue at trial a never-disclosed theory of damages would defy precisely what the Rules are designed to prevent.

### E.   Conclusion

Allowing GuideTech to recoup reasonably royalty damages now, despite never disclosing them in accordance with the specificity required by the Rules, or in response to Brilliant's discovery request, would contradict the very public policy the Rules were enacted to uphold. Namely, allowing a party to understand the contours of its potential exposure. As such, Brilliant respectfully requests that the Court exclude all evidence regarding a reasonable royalty theory of damages.

### III.   MOTION IN LIMINE NO. 3: TO EXCLUDE EVIDENCE OF A LOST PROFITS CLAIM.

Despite its initial disclosure and discovery obligations, GuideTech never articulated any specific basis for lost profits damages or provided a calculation analysis. Importantly, GuideTech failed to identify an expert or introduce a damages report on this issue. Rather, GuideTech relies solely on a single, conclusory interrogatory response as its lost profits damages "analysis." GuideTech's discovery response falls far short of the analysis expected and required to support an award for lost profits, and therefore all evidence purporting to support a lost profits damages analysis should be excluded.

### A.   Guidetech's Evidentiary Failures

GuideTech's Rule 26 disclosure purports to incorporate non-existent expert reports: "GuideTech's computation of damages will be set *forth in detail in expert reports*." Indeed, GuideTech never even attempted to identify an expert. On the last day of fact discovery, GuideTech desperately incorporated by reference "its responses to Brilliant's interrogatories regarding damages and the deposition testimony of Ronen Sigura, Oren Rajuan and Shalom Kattan." Its responses were far from meeting GuideTech's basic evidentiary burdens.

Interrogatory No. 10 is directed to GuideTech's claim of "damages." In a response on the last day of fact discovery, GuideTech provided an "estimate" out of thin air, without calculations, citations, support or explanation: "GuideTech "would have made an average profit of $8,500 on each GT658 unit sold, and $73,000 on each Femto 2000 unit sold." GuideTech's response and entire "lost profits" analysis boils down to the following leaps of faith:

- A conclusory statement that "it is highly likely GuideTech will be awarded the full amount of its lost profits because the parties are direct competitors in the same local area." GuideTech's Fourth Supplemental Response to Brilliant's First Set of Interrogatories ("4th Supp. Rog. Resp."), p. 9.

- Unsupported speculation that "GuideTech and Brilliant are the only companies that compete in low-jitter, high-speed measurements per second time interval analyzers" and hence GuideTech understands that the GuideTech and/or Femto 2000 products would substitute for the Brilliant accused products in a 1 to 1 manner." *Id.*

- Unsupported speculation that certain customers "would have bought TIA [Time Interval Analyzer] products from GuideTech but for Brilliant's sales to them of infringing TIA products." *Id.*

- Handwaving and circular reasoning that "based on its prior sales, profits, and material costs, and product configurations" and that it has "taken into account the specific applications for which Brilliant customers purchased infringing Brilliant products." *Id.*

GuideTech generically cites the deposition testimony of Oren Rajuan and Ronen Sigura, along with large swaths of documents identified only by ranges of Bates numbers, as the evidence in support, without further explanation. GuideTech identifies 1186 pages of documents as evidence in support, along with "numerous documents" within a group of another 6911 documents. 4th Supp. Rog. Resp., p. 10-11. GuideTech's over-designation was so overbroad and non-sensical, that it was effectively a non-disclosure. Again, GuideTech failed to support its assertions with ***specific*** testimony or evidence, and no expert on damages was disclosed. At best, GuideTech simply recited hornbook elements for a lost profits analysis without providing anything specific to GuideTech or this case.

### B.   The Totality Of Guidetech's Evidence Fails To Meet Any One Of The Four Panduit Factors.

GuideTech, as the patent owner, bears the burden of proof with respect to lost profits. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). Lost profits are

awarded to a patentee if it can prove that there is a reasonable probability that the patentee would have made the infringer's infringing sales "but for" the infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal 2003) (*citing State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989)). "But for" causation requires "*reliable economic evidence*" based on "*sound economic proof* of the nature of the market and the *likely outcomes with infringement factored out of the economic picture*." *Grain Processing Corp.*, 185 F.3d at 1350 (emphasis added). Similarly, the economic evidence or analysis or calculations must be sufficient to guide a fact-finder in determining the measure of GuideTech's lost profits. *Linear Tech. Corp. v. Micrel, Inc.*, 2006 U.S. Dist. LEXIS 96860, at *262 (N.D. Cal. 2006) (excluding expert testimony on patent damages "as unreliable because (1) the *calculations are not based upon sufficient facts or data* and (2) the *calculations are not the product of reliable principles and methods*") (emphasis added).

The Federal Circuit has enumerated a four-part "Panduit test" that typically needs to be met in order for the patentee to be awarded lost profits: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patentee would have made. *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 2011 U.S. Dist. LEXIS 93093, *10 (N.D. Cal. 2011), *citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Calico Brand, Inc. v. Ameritek Imps.*, Inc., 527 Fed. Appx. 987, 995 (Fed. Cir. 2013). A patentee is *not entitled to lost profits "*if the patentee *fails to establish any* of the [Panduit] requirements." *Vnus Med. Techs., Inc. v. Diomed Holdings, Inc.*, 2007 U.S. Dist. LEXIS 80863, *4 (N.D. Cal. 2007), *citing SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F. 2d 1161, 1165 (Fed. Cir.1991) (emphasis added).

In fact, courts have found that in patent cases, expert testimony is necessary to establish lost profits. *See, e.g., Subotincic v. 1274274 Ontario Inc.*, 2013 U.S. Dist. LEXIS 110726 (C.D. Cal. 2013) (holding an expert's lost profits analysis "legally deficient" when it did not discuss demand for the patented product and did not analyze noninfringing alternatives, *citing DSU Medical*, 471 F.3d at 1308). Further, the court in *Subotincic* found that an unsupported conclusory statement that

there were no alternatives [to the accused product] "as versatile, as fast and as reliable" was insufficient evidence for a lack of noninfringing substitutes, *citing Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1544 (Fed. Cir. 1991) (holding that the burden of proof is on the patentee to prove the absence of noninfringing alternatives).

Here, GuideTech never disclosed or identified evidence, testimony, or expert opinion that would support a finding that any of the four *Panduit* factors were met, or that GuideTech would have profited "but for" Brilliant's alleged infringement. GuideTech's evidence is limited to conclusions, speculation and generic recitations of hornbook law. There is no economic evidence or analysis or calculations to guide a fact-finder in determining the measure of GuideTech's lost profits.  In the same vein, GuideTech ***never*** disclosed or identified evidence, testimony, or expert opinion to determine the demand for the patented or the availability of noninfringing substitutes.

C.    **Guidetech Should Not Be Allowed To Present Any Undisclosed Damages Theory For The First Time At Trial.**

Moreover, GuideTech should not be allowed at trial to attempt to manufacture a lost profits damages case that it failed to disclose during discovery.  Such would be highly prejudicial to Brilliant, and therefore "evidence" of lost profits should be excluded from this case.  *Apple, Inc. v. Samsung Elecs. Co.*, 2013 U.S. Dist. LEXIS 162863 (N.D. Cal. 2013).  *See also Calico Brand*, 527 Fed. Appx. at 997 (holding that the ***jury should not have been allowed to consider lost profits*** when the patent holder failed to introduce evidence of one of the four *Panduit* factors) (emphasis added).

*Apple* excluded non-expert evidence of lost profits under Federal Rule of Evidence 403 and the Court's inherent authority.  *Apple* found that patentee Apple's interrogatory response "Apple has lost profits on sales of its products . . . due to Samsung's infringement and the competition by Samsung using Apple's intellectual property" was not a proper articulation of its theories.   Hence the "risk of unfair prejudice to Samsung by admitting Apple's  new lost profits theory at this late date is severe." More specifically, "there is a high risk that introducing this new theory, the contours of which remain murky even to the Court, will confuse the issues, mislead the jury, and waste time" and "these risks substantially outweigh the probative value of Apple's new theory."

As in *Apple*, GuideTech has failed to articulate its theories of lost profits in detail; its conclusory statements without supporting evidence are precisely the same sort of conclusory theory that the *Apple* court excluded.  In this case, any evidence of lost profits should similarly be excluded under Rule 403.

D.    **Conclusion**

GuideTech never set forth the requisite "***reliable economic evidence***" based on "***sound economic proof***" to meet its burden.  Allowing GuideTech to present a lost profits case for the first time at trial, without ever having disclosed evidence, testimony or expert opinion in support would be highly prejudicial to Brilliant, confuse the issues, mislead the jury, and waste time.  As such, Brilliant respectfully requests that the Court exclude all evidence regarding a lost profits theory of damages under Rule 403.

**IV.    MOTION IN LIMINE NO. 4: TO EXCLUDE EVIDENCE OF DEMAND FOR ANY OF GUIDETECH'S OWN PRODUCTS ALLEGEDLY COVERED BY THE PATENTS-IN-SUIT.**

Brilliant moves *in limine* to preclude GuideTech, its witnesses and/or counsel, from offering or attempting to offer into evidence, referring to, testifying about, opining and/or commenting upon the demand for any of GuideTech's own products allegedly covered by the patents in suit (the "patented product").  Here, Brilliant's Interrogatory No. 10 asking for details on GuideTech's determination of damages, including "the method and/or theory under which you determined such damages, and the data and calculations used to determine the amount of damages"  failed to disclose evidence, testimony or expert opinion that shows a market demand for products embodying the patents-in-suit.  Accordingly, having denied Brilliant the discovery to which it was entitled, GuideTech should not be able to introduce evidence or make arguments on that topic now.

GuideTech cannot rely on sales of its own products to establish a demand for the patent product, because GuideTech did not disclose evidence that ***its own products*** sold since Brilliant Instruments started selling products even embody the patents-in-suit.  At best, GuideTech provided only speculation, qualifying such patent coverage in terms of a "belief", conditional upon completing its investigation:

"GuideTech believes that at least the Femto 2000 and GT4000 practice one or more claims of the asserted patents.  GuideTech is still investigating which TIA products it has sold since 1995 and which of those products practice one or more claims of the patents-in-suit."

Yet when asked "on a claim by claim and product by product basis whether the GT200, the GT654 and the GT658 practice the invention of any Asserted Claim of the Asserted Patents" and if so, to "describe in detail all bases" for such contention…  GuideTech admitted that it has "***not analyzed whether the GT200, GT654 or GT658 practices any Asserted Claim of the Asserted Patents.***" GuideTech's Responses to Brilliant's Interrogatories to No. 15 and 16.

And in the deposition of Ronen Sigura, when asked about the GT4000, Sigura admitted that "I am not making boxes anymore."  Sigura Deposition, 188:2-5, 193:22-194:3.  Later in that same deposition, Sigura admitted that ***GuideTech has not sold a Femto 2000 since the 3rd quarter of 2008, which was before Brilliant even started selling products***.  *Id.*, 276:11-20.

GuideTech's inability to rely on sales of its own products to establish a demand for the patent product (or intentional withholding of documents) is evidenced by GuideTech's documents showing the sales of products: no new Femto 2000 or GT4000 products have been sold since Brilliant started selling products in Q1 of 2009.  GTL0098706-7.  The only products that GuideTech claim practice any of the Asserted Claims of the Asserted Patents haven't even been sold during the period of the alleged infringement.   Further, there is no written discovery, testimony, or expert opinion that states or even suggests that any GuideTech product actually sold during the period of alleged infringement by Brilliant in this case actually practices any asserted claim of the patents-in-suit.

In light of the lack of evidence, testimony or expert opinion on the matter, the court should preclude GuideTech from introducing any evidence of demand for the patented product.

## V.   MOTION IN LIMINE NO. 5: TO EXCLUDE EVIDENCE REGARDING THE ABSENCE OF NONINFRINGING SUBSTITUTES.

**Brilliant moves in limine to preclude GuideTech**, its witnesses and/or counsel, from offering or attempting to offer into evidence, referring to, testifying about, opining and/or commenting upon the absence of noninfringing substitutes for the patented product.

Similar to Motion in Limine No. 4, GuideTech's initial and supplemental responses to interrogatory No. 10 fail to set forth the absence of noninfringing substitutes. GuideTech admits that it didn't investigate whether any other products on the market infringed or not the asserted claims of the patents-in-suit. GuideTech admitted in its original response to interrogatory No. 8 that "[f]rom and including 2008 to the present, *GuideTech has not conducted any formal inquiries into the potentially infringing activities of any person or entity other than Shalom Kattan and Brilliant*." Further, in its supplemental response to interrogatory No. 8, GuideTech stated that "[b]etween approximately October 2008 and May 2009, GuideTech discussed the prospect of conducting a preliminary analysis of whether Verigy or Credence/LTX infringed GuideTech's patents with an attorney, Dale Curtis Hogue, Sr. Mr. Hogue *did not conduct any formal analysis* for GuideTech."

GuideTech, as the patent owner, has the burden of proof with respect to lost profits. *Grain Processing*, 185 F.3d at 1349. Thus, in light of the lack of evidence, testimony or expert opinion on the matter, the court should preclude GuideTech from introducing any evidence of the availability of noninfringing substitutes for the patented product.

## VI.   MOTION IN LIMINE NO. 6: TO EXCLUDE EVIDENCE THAT GUIDETECH HAS THE MANUFACTURING AND MARKETING CAPACITY TO EXPLOIT THE DEMAND FOR PRODUCTS EMBODYING THE PATENTS-IN-SUIT.

Brilliant moves *in limine* to preclude GuideTech, its witnesses and/or counsel, from offering or attempting to offer into evidence, referring to, testifying about, opining and/or commenting upon GuideTech's manufacturing and marketing capacity to exploit the demand for products embodying the patents-in-suit.

As with Motions in Limine Nos. 4 and 5 above, GuideTech's initial and supplemental responses to interrogatory No. 10 never discusses GuideTech's manufacturing and marketing capacity to exploit the demand for products embodying the patents-in-suit. As discussed above in Motions in Limine Nos 4 and 5, GuideTech admits it has not investigated the market nor the demand for its patented product.

GuideTech, as the patent owner, has the burden of proof with respect to lost profits. *Grain Processing*, 185 F.3d at 1349. Thus, in light of the lack of evidence, testimony or expert opinion on the matter, the court should preclude GuideTech from introducing any evidence of GuideTech's manufacturing and marketing capacity to exploit the demand for products embodying the patents-in-suit.

## VII. MOTION IN LIMINE NO. 7: TO EXCLUDE EVIDENCE OF THE AMOUNT OF PROFIT IT WOULD HAVE MADE, BUT-FOR BRILLIANT'S "INFRINGING SALES".

Brilliant moves *in limine* to preclude GuideTech, its witnesses and/or counsel, from offering or attempting to offer into evidence, referring to, testifying about, opining and/or commenting upon the amount of profit GuideTech would have made but for Brilliant's allegedly infringing activities. As with Motions in Limine Nos. 4 -- 6 above, GuideTech's initial and supplemental responses to interrogatory No. 10 fail to calculate the profits it would have made.

GuideTech should be precluded because (a) it failed to provide evidence, testimony or expert opinion as to how it obtained its profit numbers; and (b) it failed to provide evidence, testimony or expert opinions to support it allegation that GuideTech would have sold products on a 1:1 basis but for Brilliant's allegedly infringing sales; and (c) if failed to provide evidence, testimony or expert opinion that customers would have purchased GT658's or Femto 2000's instead of BI200's and Femto 2000's instead of BI220's.

### a) GuideTech's "Profit" Numbers

GuideTech's entire damages "evidence" is found in their second supplemental initial disclosures and the supplemental response to interrogatory 10. GuideTech did not disclose an expert to opine on damages and did not prepare an expert report on damages.

GuideTech, without any supporting calculations, evidence or opinion, merely concludes that it would have received, on average, $73,000 for each Femto 2000 that it sold, and $8,600 for each GT658 that it sold. The "but for" analysis requires "***reliable economic evidence*** of 'but-for' causation" based on "***sound economic proof*** of the nature of the market and the likely outcomes

with infringement factored out of the economic picture." *Grain Processing Corp.*, 185 F.3d at 1350 (emphasis added).

Here, nowhere near that level of detail has been disclosed in this case.  In GuideTech's supplemental initial disclosures and its supplemental response to interrogatory No. 10, GuideTech provides only a single "average profit" number; GuideTech provides no calculations or expert opinion, and for "evidence," it generically lists over 8000 pages of documents and entire depositions without explaining where in any of the documents or deposition testimony the requisite information and calculations can be determined.   Because GuideTech has provided no calculations, evidence, testimony or expert opinion to support its alleged profit numbers, the court should preclude GuideTech from introducing any evidence of GuideTech's average profits.  *Linear Tech.*, 2006 U.S. Dist. LEXIS 96860, at *262 (excluding expert testimony on patent damages "as unreliable because (1) the ***calculations are not based upon sufficient facts or data*** and (2) the ***calculations*** are not the product of reliable principles and methods") (emphasis added).

### b)  GuideTech's "1:1" Allegations

Similarly, in its supplemental initial disclosures and supplemental response to interrogatory No. 10, GuideTech generates a "lost profit" number based on assuming, without evidence, analysis, testimony or expert opinion, that it would have sold a Femto 2000 or a GT658 on a 1:1 for each BI200 Brilliant sold, or a Femto 2000 for each BI220 Brilliant.

As a threshold matter, GuideTech has provided no evidence, testimony, expert opinion, or a declaration from a customer or purchaser of TIA products that these selected GuideTech products would substitute on a 1:1 basis with the identified Brilliant products.  GuideTech hasn't presented evidence that the capabilities would even be the same.   Even if the capabilities were the same – and GuideTech has introduced no evidence, analysis, testimony or expert opinion that they are – a customer might not consider them a substitute for one another based on the differences in price alone.  *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1540 (Fed. Cir. 1995) ("However, if the products are not sufficiently similar -- ***in terms of price***, product characteristics, and marketing channels -- to compete for the same customers, the infringer's customers will not

necessarily transfer their demand to the patentee's product in the absence of the infringing product.") (emphasis added); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991) (Holding that, with respect the Panduit factors, the alleged alternative "***must not have a disparately higher price*** than or possess characteristics significantly different from the patented product.") (emphasis added).

Indeed the substitution is certainly illogical; for example, the Femto 2000 on the left is a large box, capable of measuring multiple channels at once, that GuideTech claims (without supporting evidence) earns $57,000 in profit each time one is sold.

 

The BI200, on the other right, is a small card for insertion into a computer and has a price (not profit) of around $20,000, and the BI220 *sells* for $4,000 or less. BI0038506-20.

Because GuideTech has provided no calculations, evidence, testimony or expert opinion to support its alleged 1:1 substitutions, the court should preclude GuideTech from introducing any evidence of that customers would have substituted GuideTech products for Brilliant products on a 1:1 basis.

**c) GuideTech's Alleged Substitutions**

As noted above, in its supplemental initial disclosures and supplemental response to interrogatory No. 10, GuideTech generates a "lost profit" number based on assuming, without evidence, analysis, testimony or expert opinion, that it would have sold a Femto 2000 or a GT658 on a 1:1 basis for each BI200 Brilliant sold, or a Femto 2000 for each BI220 Brilliant.

Again, GuideTech has provided no evidence, testimony, expert opinion, or a declaration from a customer or purchaser of TIA products that these selected GuideTech products would substitute the identified GuideTech products with the identified Brilliant products. The substitution

is certainly not obvious; for example, the Femto 2000 is a large box, capable of measuring multiple channels at once, that GuideTech claims (without supporting evidence) earns $57,000 in profit each time one is sold.  The BI200, on the other hand, has a price (not profit) of around $20,000, and the BI220 sells for $4,000 or less.  BI0038506-20.  Even if the capabilities were the same – and GuideTech has introduced no evidence, analysis, testimony or expert opinion that they are – a customer might not consider them a substitute for one another based on the differences in price alone.  *See, e.g., Comair*, 49 F.3d at 1540 ("However, if the products are not sufficiently similar -- ***in terms of price*** […] the infringer's customers will not necessarily transfer their demand to the patentee's product.") (emphasis added); *Kaufman*, 926 F.2d at 1142 (The alleged alternative "***must not have a disparately higher price*** than […] the patented product.") (emphasis added).

Because GuideTech has provided no calculations, evidence, testimony or expert opinion to support it alleged substitutions, the court should preclude GuideTech from introducing any evidence of that customers would have substituted specific GuideTech products for specific Brilliant products.

## VIII.   MOTION IN LIMINE NO. 8: TO EXCLUDE EVIDENCE THAT THE MARKET IS A TWO-SUPPLIER MARKET.

Brilliant moves *in limine* to preclude GuideTech, its witnesses and/or counsel, from offering or attempting to offer into evidence, referring to, testifying about, opining and/or commenting upon the market for time interval analyzers as being limited to a two-supplier market: GuideTech and Brilliant.   In its supplemental initial contentions and its supplemental response to interrogatory No. 10, GuideTech speculates "[i]t is highly likely GuideTech will be awarded the full amount of its lost profits because the parties are direct competitors in the same local area. Furthermore, GuideTech and Brilliant are the only companies that compete in low-jitter, high-speed measurements per second time interval analyzers."  However, GuideTech provides no evidence, testimony or expert opinion to support this assertion.  Accurately identifying a two-supplier market "***requires an analysis*** which excludes alternatives to the patented product with disparately different prices or significantly different characteristics." *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1288 (Fed. Cir. 2011), *citing Micro Chem., Inc. v. Lextron, Inc.*,

318 F.3d 1119, 1124 (Fed. Cir. 2003) (emphasis added).  Beyond the lack of analysis, GuideTech's later admissions directly contradict these unfounded conclusory statements.

Ronen Sigura, in his deposition in this case, admitted that GuideTech was considering investigating at least one other competitor for patent infringement.  Sigura Depo, 30:5-12.  Sigura also admitted that, at least in one case, a customer purchased Verigy devices instead of GuideTech devices, further showing that the market for analyzers is not a two-supplier market.  *Id.*, 131:6-18.  In addition, Oren Rajuan, in his deposition, further conceded that GuideTech was investigating at least two suppliers other than Brilliant for patent infringement.  Rajuan Depo, 30:5-12.  GuideTech has introduced no testimony, evidence or expert testimony to refute these statements that are inconsistent with its interrogatory response.

The record in this case is completely devoid of any written discovery, evidence, testimony, or expert opinion that suggests or stated that the market for time interval analyzers of the type manufactured by GuideTech and Brilliant is a two-supplier market.
Thus, in light of the lack of evidence, testimony or expert opinion on the matter, the court should preclude GuideTech from introducing any evidence that the market for time interval analyzers sold by Brilliant and GuideTech is a two-supplier market.  *EZ Dock, Inc. v. Schafer Sys.*, 2003 U.S. Dist. LEXIS 3634, *16 (D. Minn. 2003) (excluding expert testimony on patent damages where "[the] expert report *points to no facts* that underlie [the expert's] proposed testimony regarding . . . the nature of the market as a two-supplier market") (emphasis added).

## IX.   MOTION IN LIMINE NO. 11: TO EXCLUDE ANY EVIDENCE REGARDING SASSAN TABATABAEI AS AN EXPERT WITNESS.

Brilliant herby moves *in limine* to preclude GuideTech from mentioning, referring to, or offering into evidence any information that Sassan Tabatabaei is an expert witness.  GuideTech retained Tabatabei as an expert solely to "review the Kaliski Report, including the opinions set forth therein, and render my own opinions as to the validity of claims 1-13, 15 and 20 of the '231 Patent, claims 1-2, 4-9, 15, 18 and 20 of the '671 Patent and claim 1 of the '649 Patent (collectively, the "Asserted Claims")."  (Tabatabei Expert Report at 1.)  On February 12, 2014, the Court granted GuideTech's motion for summary judgment and held that assignor estoppel bars Brilliant's

invalidity claims with respect to the '231, '671, and '649 patents.  Thus, in light of the Court's

Order, any expert opinion that Tabatabei made on the issue of invalidity is not relevant, necessary,

or helpful to assist the jury to understand the facts of the case on that issue. Further, because

Tabatabei only gave an opinion on the issue of invalidity, any reference, evidence or mention of

Tabatabei as an expert is beyond the scope of his expert opinion and is therefore, impermissible.

Fed. R. Civ. P. 26(a)(2)(B).  Any "expert" testimony beyond invalidity would be new evidence

presented for the first time and extremely prejudicial to Brilliant.  Rule 37(c)(1) operates as a

sanction against any new testimony.

Here, a member of the jury may be more likely to take Tabatabaei's testimony at face value

because it is delivered by a so-called "expert," even if his testimony is mere opinion unsupported by

reliable methods or outside the area of his legitimately claimed expertise.  Thus, evidence

suggesting that Tabatabei is an expert should be excluded.

## X.   MOTION IN LIMINE NO. 10: TO EXCLUDE EVIDENCE RELATING TO INJUNCTIVE RELIEF.

Pursuant to Federal Rules of Evidence 401, 402, and 403, Brilliant hereby moves *in limine*

to exclude any evidence, mention, or reference to GuideTech's request for a permanent injunction at

trial.  Any evidence regarding GuideTech's request for injunctive relief should be precluded for

several reasons.

### A.   Insufficient Evidence of Injunction

A plaintiff seeking a permanent injunction must introduce entirely different evidence.

Namely, the plaintiff *must* prove that (1) the plaintiff suffered an irreparable injury; (2) an

injunction is proper because there are inadequate remedies at law; (3) a balancing of plaintiff and

defendant hardships weighs in favor of granting the injunction; and (4) the public interest would not

be disserved by the injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  In this

case, GuideTech has failed to provide evidence on at least two of the four elements required to

obtain an injunction. GuideTech has not provided any witnesses or evidence to address the

balancing of hardships with Brilliant, nor has GuideTech put forth any witnesses or evidence

concerning a balance of hardships and has not discussed how an injunction would affect the public.

Because GuideTech has failed to provide any evidence whatsoever on at least two of the four elements required for an injunction, any reference to an injunction or injunctive relief would be more prejudicial than probative. The Court should preclude GuideTech from making any reference to the possibility of an injunction pursuant to Federal Rules of Evidence 401 and 402.

### B. __Question for the Court, Not the Jury__

Even if the jury finds infringement, the Court -- not the jury, will ultimately decide the appropriateness of injunctive relief. *eBay Inc.*, 547 U.S. 388, 391 (2006) (entry of an injunction in patent dispute is submitted to the discretion of the court under the traditional factors for granting equitable relief). It would therefore be inappropriate for the jury to consider in its deliberations the potential effect of such relief. *See Computer Assoc. Int'l, Inc. v. American Fundware, Inc.,* 831 F. Supp. 1516, 1530 (D. Co. 1993) (granting motion *in limine* to exclude reference to claim for injunctive relief in jury's presence because "[the Court] will determine, if necessary, whether to enjoin AFWs distribution of PC-Fund or Fundware based on the jury's conclusions").

### C. __Confusion of Issues__

Finally, any reference by GuideTech to the possibility of an injunction would confuse the infringement issues that the jury will need to consider and would unfairly prejudice the jury against Brilliant. *See, e.g., United States Football League v. National Football League,* No. 84-7484-PKL, 1986 WL 7012, at *2-3 (S.D.N.Y. 1986) (barring defendants "from referring to the possibility of injunctive relief in front of the jury, since such references would needlessly confuse the issues and unfairly prejudice plaintiffs"). Introduction of this evidence would invite the jury to base its decision on policy considerations, not on the issue of infringement. Accordingly, GuideTech would impermissibly inject policy issues into the jury's liability analysis that are intentionally left to the Court's discretion. The possibility of an injunction remedy presents a classically irrelevant and potentially prejudicial fact, which the Court should exclude pursuant to Federal Rule of Evidence 403.

D.     **Conclusion**

In sum, GuideTech has not provided any evidence that warrants consideration of injunctive relief, let alone an introduction into trial.  Furthermore, GuideTech's request for injective relief has no probative value to the infringement issues at hand, is solely a question for the court, and if presented to the jury, would confuse the issues and result in prejudice to Brilliant.  Thus, any evidence of GuideTech's request should be precluded.

XI.    **MOTION IN LIMINE NO. 11: TO EXCLUDE ANY EVIDENCE OF PENDING OR PRIOR PROCEEDINGS BETWEEN PARTIES.**

Brilliant moves *in limine* to preclude GuideTech, its witnesses and/or counsel, from offering or attempting to offer into evidence, referring to, testifying about, opining and/or commenting upon pending or prior legal proceedings, aside from the current action, between Brilliant and GuideTech, including *Guidetech, LLC* v. *Brilliant Instruments, Inc.* et al., Case No. 110-cv-187147 in the Santa Clara County Superior Court (the "State Case").  GuideTech should be precluded from making references to pending and prior proceedings because they are not relevant to the current case and any references to them would unfairly prejudice Brilliant.

This case began as a consolidated action with Federal and State law claims in Federal Court.  As outlined in detail in Brilliant's Opposition to GuideTech's Motion for Leave to Amend its Answer [Dkt. 235] and Brilliant's Motion for Sanctions, [Dkt. 250], it was GuideTech that strategically initiated parallel litigation for the express purpose of driving Brilliant Instruments out of business.  Although GuideTech could have filed its State Law Claims in the Federal Action, it *chose* not to in order to try to drive Brilliant Instruments out of business by forcing Brilliant to maintain parallel actions.  Dkt. 250, p. 3.  On November 12, 2010, GuideTech filed an action in Santa Clara Superior Court alleging state law causes of action against Brilliant and its owner, Shalom Kattan ("Kattan").  Brilliant immediately removed GuideTech's State Law Claims to Federal Court.  Given the early stage of litigation, Brilliant sought judicial economy in having the cases heard in the same forum.  4-10-CV-05669-CW, Dkt. 1.   However, GuideTech successfully opposed the removal and GuideTech's state law causes of action were remanded to state court on January 18, 2011.  *Id.*, Dkt. 16.  In its motion to remand, GuideTech made clear that "**the facts**

*alleged in the State Action do not rise from the same core of operative facts as the Federal Court Action*." *Id.*, Dkt. 4 (emphasis added). At this early stage in the case, the Court remarked that "it would be more efficient for the parties' disputes to be litigated in one court," *id.*, Dkt. 16, and stayed the remand for three days in order for the parties to come to an agreement on a stipulation to remove GuideTech's state law claims to federal court. GuideTech would not agree to stipulate to having its claims heard in Federal Court, and GuideTech's state law claims were remanded. *Id.*, Dkt. 17.

None of these state law claims are relevant or at issue in the current matter, which concerns patent infringement, not state torts. Indeed, GuideTech even acknowledged that the state causes of action "do not arise from the same core of operative facts" as the instant action. 4-10-CV-05669-CW, Dkt. 5. In the State Case, discovery is still underway, and amended complaint has recently been filed, and there has been no determination on the merits of any issues. There is simply nothing in the State Case that is probative of any issue remaining in This Case, and there is ample concern that issues from the State Case would be prejudicial to Brilliant and confusing to the jury.

Further, the parties in the two cases are not the same. In addition to Brilliant and GuideTech, both Kattan and Sigura are named parties in the State Case, and any reference to them at trial in this capacity would serve no purpose but to confuse the jury. A recently-filed amended complaint adds three new parties to the state case, none of whom are parties in this case.

Thus, because the State Case concerns irrelevant state law clams and parties that are not presently named in the current action, GuideTech should be precluded from making any reference to the State Case and any other prior or pending legal proceedings between the parties aside from this action under Federal Rule of Evidence 403.

## XII.   MOTION IN LIMINE NO. 12: TO EXCLUDE DOCUMENTS PRODUCED AFTER FEBRUARY 19, 2014.

Pursuant to Federal Rules of Evidence 401, 402, and 403, Brilliant hereby moves *in limine*

to exclude the use of documents GuideTech "produced" after February 19, 2014.  These documents include 1) documents sent via a CD and then made available on February 26, 2014; 2) un-Bates labeled "Bill of Goods" documents dated 2/18/04  identified for the first time by email on March 4, 2014; 3) and additional documents "just made available" by GuideTech's "expert witness", and apparently generated by Dr. West  which were produced for the first time by email on March 5, 2014.

### A.     <u>Document Dump Made Available February 26, 2014.</u>

Brilliant's Interrogatory No. 9 asks GuideTech to provide details on sales volume and revenues broken down by quarter.

> For each GuideTech product and/or service offered during the period from and including June 2004 to the present, identify on a quarterly basis the quantities produced, numbers of products sold, and gross revenues that GuideTech has received, expects to receive and/or has projected to receive from the sale, lease, license, sublicense or use of such product or service, setting out the respective amounts separately for each customer.

GuideTech had not provided an initial or supplemental response to this interrogatory; although a motion to compel GuideTech to respond was filed on December 28, 2010, no order on the motion was entered.  Dkt. 42.  On February 5, 2014, Brilliant asked GuideTech to supplement its response to interrogatory No. 9, which asked GuideTech to provide details on In response to Brilliant's request, GuideTech notified Brilliant on February 19, 2014, that it would provide "updated production" that would "address our request" and that it would send documents on a CD.  By February 26, 2014, no CD had been received.  Following pressure by Brilliant, GuideTech finally made them available online.  Indeed GuideTech had made a careless document dump of nearly 1,000 separate documents.

First, not one of the thousand or so documents were labeled.  They were dropped in native format and not labeled as required by Federal Rule of Procedure 34(b)(2)(E)(i).  Second, GuideTech failed to mark any of its documents confidential despite stipulating to a protective order in June, 2010 which mandated that information in documentary form have the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" *affixed to each page* for protected material.  Dkt. 38.  Thus, to the extent that

GuideTech claims that these documents contain protected material, it has failed to designate them in accordance with the protective order.

Third, these documents failed to "identify on a quarterly basis" the documents requested or "gross revenues." Instead, GuideTech's documents were categorized by year and including individual product listing prices and sales order sheets. Further, GuideTech produced documents which are wholly irrelevant to Interrogatory No. 9, such as configuration checklists and an assignment of patents. Fourth, many of the documents date back to 2004, long before the discovery deadline in this case. In addition, GuideTech provided no guidance as to how these documents were responsive to Brilliant's interrogatory No. 9, which asked "For each GuideTech product and/or service offered during the period from and including June 2004 to the present, identify on a quarterly basis the quantities produced, numbers of products sold, and gross revenues that GuideTech has received, expects to receive and/or has projected to receive from the sale, lease, license, sublicense or use of such product or service, setting out the respective amounts separately for each customer."

Pursuant to Rule 26(e) and 37(c)(1), these documents should be excluded from trial.

### B.   Un-Bates labeled "Bill of Goods" Documents Produced For First Time on 3/3/2014.

On March 3, 2014, less than a month before trial, GuideTech produced for the first time a PDF of what it identified as the "bill of goods" documents alleging that they were part of the previous February 26 document dump. These PDFs were not Bates-stamped and lacked confidentiality designations in direct violation of the Discovery Order. Brilliant immediately informed GuideTech that cherry-picking some documents and presenting them in PDF while burying the surrounding context in an unreviewable form was unacceptable. To date, GuideTech has provided no substantive response.

GuideTech has had more than enough time to comply with the Discovery rules. GuideTech's unfair gamesmanship of cherry-picking certain documents while burying the remaining contextual and responsive documents in a document dump would be unfairly prejudicial to Brilliant.

**C.**      **Un-Bates labeled Documents Created by Dr. West And Produced For First Time on 3/3/2014.**

On March 5, 2014 (today) GuideTech sent by email newly-created additional exhibits that its "expert", Dr. West, "just provided to us that he may use in connection with his testimony."   Two of the documents are Brilliant documents, and the others were apparently generated by Mr. West. These documents as outside of the scope of his expert report, produced well after the expert discovery cut-offs less than one month prior to trial.  They are prejudicial because Brilliant hasn't been afforded the opportunity to depose Dr. West on them, and should be excluded.  Further, these documents should be excluded as untimely and outside the scope of Dr. West's report.

Dated:  March 5, 2014

Respectfully submitted,

**KAO & SWOPE LLP**

*/s/ Richard Swope*

Richard Swope
Chris Kao

Attorneys for Plaintiff
Brilliant Instruments, Inc.