IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUIDETECH, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BRILLIANT INSTRUMENTS, INC.,<br><br>　　　　Defendant.<br>_____/ | No. C 09-5517 CW<br><br>ORDER ON MOTIONS FOR JMOL, NEW TRIAL OR ADMINISTRATIVE RELIEF, TO STRIKE, FOR PRELIMINARY INJUNCTION, AND TO SEAL<br><br>(Docket Nos. 322, 324, 330, 331) |

After a trial held from March 31, 2014 to April 7, 2014, the jury determined that Defendant Brilliant Instruments, Inc.'s products infringe Plaintiff GuideTech, Inc.'s patent. Now, Brilliant renews its motion for judgment as a matter of law (JMOL). GuideTech moves for a permanent injunction against Brilliant. After briefing was completed, GuideTech filed a reply asking the Court to grant a new trial on infringement of the BI221, or to grant "administrative relief" and alter the jury's verdict on that product. On July 3, 2014, the Court held a hearing. Having considered the papers and the arguments of counsel, the Court DENIES Brilliant's renewed motion for JMOL, DENIES GuideTech's motion for new trial or administrative relief, DENIES as moot Brilliant's motion to strike, DENIES GuideTech's motion for preliminary injunction, and DENIES GuideTech's motion to seal.

BACKGROUND

A.  Brief Background of the Patent and the Accused Products

In 1998, Shalom Kattan founded Guide Technology, Inc., the predecessor entity to GuideTech, which is in the business of manufacturing and selling precision time and frequency measurement instruments.  Docket No. 35 ¶ 3.  Mr. Kattan is the sole named inventor for several patents asserted in this litigation.  Chin Decl., Exs. 1-3, 12.  In 2004, Mr. Kattan left GuideTech to establish Brilliant, a one-man company comprised of Mr. Kattan himself.  Id. at 42:12-25; Chin Decl., Ex. 9.  Brilliant also manufactures and sells measurement instruments.  Docket No. 39 ¶ 4.  On May 23, 2008, Guide Technology sold its assets, including the patents at issue, to Ronen Sigura, who then founded GuideTech. Chin Decl., Ex. 24.

On November 20, 2009, Brilliant initiated this suit seeking declaratory judgment that its accused products, including BI200 and BI220, do not infringe GuideTech's patents.  The patents concern time interval analyzers, testing instruments used in the semiconductor industry to detect timing errors in integrated circuits.  In early 2011, Brilliant filed a motion for summary judgment of non-infringement and GuideTech filed a motion for summary adjudication on the issue of assignor estoppel.  The Court granted Brilliant's motion for summary judgment, finding Brilliant's products did not infringe the patents-in-suit, and denied GuideTech's motion on assignor estoppel as moot.  See Docket No. 137.  On October 4, 2011, GuideTech filed an appeal to the Federal Circuit from the summary judgment order.  Docket No. 166.  The Federal Circuit reversed the Court's summary judgment

2

order and remanded, finding disputed issues as to whether Brilliant's products infringe the patents-in-suit under the doctrine of equivalents. <u>Brilliant Instruments, Inc. v. GuideTech, LLC</u>, 707 F.3d 1342, 1348-49 (Fed. Cir. 2013). After the case returned to the district court, the Court granted summary judgment on the issue of assignor estoppel, barring Brilliant's invalidity case. Shortly before trial began, GuideTech dropped its claims based on two of the patents-in-suit, leaving only U.S. Patent No. 6,226,231 (the '231 patent).

B.  Pretrial Conference

On March 19, 2014, the Court held a pretrial conference and heard arguments on motions in limine and pretrial motions. At the pretrial conference, the Court required GuideTech to disclose to Brilliant its theory of damages, including a narrative or chart of the products for which profits were lost, when the profits were lost, and cites to the record so Brilliant could check the numbers. Docket No. 283 (Pretrial Conference Transcript) at 37:22-38:16. However, the Court declined to exclude GuideTech's lost profits theory because, while GuideTech had no damages expert, it had disclosed at least some evidence in support of the theory. Docket No. 276 at 1-2. A motion in limine is generally not the proper vehicle for challenging the sufficiency of the plaintiff's case. See <u>Bowers v. Nat'l Collegiate Athletic Ass'n</u>, 563 F. Supp. 2d 508, 532 (D.N.J. 2008). The Court ruled that GuideTech could "only present evidence it has disclosed to Brilliant and must cite before trial where such evidence was disclosed." Docket No. 276 at 2.

3

C.   Trial - Infringement

On March 31, 2014, before jury selection, it became apparent that GuideTech had failed pursuant to the Court's pretrial orders to disclose to Brilliant a narrative or chart describing its damages calculations. Docket No. 299 (March 31, 2014 Transcript) at 6:8-7:21. At the Court's request, GuideTech disclosed the chart. Id. at 8:7-9:14; 12:4-16:20. Because the chart was not timely disclosed to Brilliant, the Court sought to minimize prejudice and costs to both sides by bifurcating the liability and damages portions of the trial, which would allow Brilliant to review GuideTech's damages calculations. Id. at 18:11-15; 26:1-13.

The jury first heard evidence on liability. After deliberating, the jury returned a verdict finding that the BI200 and BI220 infringed claims 1, 2, 4, and 5, but could not agree on infringement of claim 3. Docket No. 300. As for the BI201 and BI221, the jury agreed that these products did not infringe any of the asserted claims. Id. The jury did not find induced or willful infringement. GuideTech withdrew claim 3 so that the Court could accept the incomplete verdict. Docket No. 310 (April 3, 2014 Transcript) at 466:10-14.

D.   Trial - Damages

On the following day, April 4, 2014, the jury heard the parties' respective positions on damages. GuideTech did not have an expert to testify as to lost profits, but relied on its CEO, Mr. Sigura, to testify as to lost sales and costs. Docket No. 311 (April 4, 2014 Transcript) at 500. Mr. Sigura testified that, through his experience managing GuideTech, he was familiar with

4

both the market and GuideTech's own sales and costs. Id. at 500-02. Mr. Sigura concluded that GuideTech had been damaged by the infringing products in the sum of $5,754,567. Id. at 523:8-9. Brilliant likewise did not have a damages expert, but relied on its CEO, Mr. Kattan, to rebut Mr. Sigura's testimony. Id. at 540.

After the presentation on damages concluded, the jury began deliberations. The jury asked whether it was limited to awarding lost profits based on GuideTech's Femto 2000 and GT 568 products, or whether it could consider lost sales of other products, such as the GT 4000 which replaced the Femto 2000. Id. at 591:21-25. The parties agreed that no evidence had been presented on the GT 4000, so it could not be considered. Id. at 592. Accordingly, the Court advised the jury that it was limited to the Femto 2000 and GT 658, and it could not include the loss of sales of other products in its calculation. Id. at 594:25-595:1-2. After a couple of more hours of deliberation, the jury passed a note asking to speak to the Court. The jury foreperson expressed frustration that the jury could not "come up with a decision." Id. at 596:5-9. The Court responded by asking the jury to continue deliberating, and advising that if there was a problem relating to the evidence, the jury should "study the jury instructions again" to see "what needs to be proved and by whom." Id. at 596:12-22. The Court further instructed the jury to think about it over the weekend and reconvene on Monday to continue deliberations. Id. at 599:7-11.

On Monday, the jury reconvened to deliberate for about five hours before delivering their damages verdict. The jury returned

5

a verdict assessing damages for GuideTech and against Brilliant in the amount of $342,229.23.  Docket No. 312, 605:6.

## DISCUSSION

A. Judgment as a Matter of Law

 1. Legal Standard

The standard for evaluating a motion for JMOL is similar to that of a motion for summary judgment, albeit at a later stage of the proceeding.  Lies v. Farrell Lines, Inc., 641 F.2d 765, 772 (9th Cir. 1981).  To prevail on a renewed motion for JMOL following a jury verdict, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied by the jury's verdict cannot in law be supported by those findings."  Pannu v. Iolab Corp., 155 F.3d 1344, 1348 (Fed. Cir. 1998).  "Substantial evidence" means evidence that is sufficient "to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  Harper v. City of Los Angeles, 533 F.3d 1010, 1021 (9th Cir. 2008).  If the jury was properly instructed and there is substantial evidence, then the court must sustain the jury's verdict.  Id.  The court must review the record as a whole, but disregard evidence favorable to the moving party that the jury is not required to believe.  Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001).

 2. Infringement

Brilliant contends that the jury's verdict on infringement is contrary to evidence that the BI200, BI201, BI220, and BI221 are all equivalent for purposes of infringement, and thus that a

6

verdict that the BI200 and BI220 infringed is inconsistent with one that the BI201 and BI221 did not.

As a preliminary matter, GuideTech argues that Brilliant waived this issue.  On the second day of the liability phase, the Court gave both sides the opportunity to object to its proposed verdict form, which asked the jury to decide infringement as to each accused product, allowing them to find infringement of some products but not others.  See Docket No. 303 (April 1, 2014 Transcript) at 369:14-21 ("THE COURT: Then I handed you that verdict form . . . It occurred to me that they could conceivably find that at least that the 221 didn't infringe, even if the others did.").  Both Brilliant and GuideTech agreed that the proposed verdict form was proper.  At the time the parties approved the verdict form, however, Brilliant did not know whether GuideTech would present sufficient evidence to support its allegations.  Brilliant's assent to the verdict form does not preclude its argument at JMOL that GuideTech failed to present evidence showing that the two sets of products were distinct.

GuideTech next maintains that Brilliant waived this argument because it failed to raise it in its initial JMOL motion at trial under Rule 50(a), and so it cannot renew the argument now under Rule 50(b).  Fed. R. Civ. P. 50.  The "ground that there was not substantial evidence to support the jury's verdict is not before this court unless the appellant, at the close of the evidence or case, interposed a motion for directed verdict." Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1493 (9th Cir. 1986) (internal punctuation omitted).  GuideTech's second waiver contention is unavailing.  The basis of this JMOL argument is

7

GuideTech's alleged failure to meet its burden of proof, which Brilliant raised in its initial JMOL.  Docket No. 303, 265:2-9.

On the merits of the motion, GuideTech presents the testimony of Mr. Kattan, designer of the accused products, to show that the products are not distinct:

> Q: Couple of follow-up questions, Mr. Kattan.  Do you know what the difference is between the brilliant instruments BI 200 and BI 201?
> A: The frequency range is lower on the 201.
> Q: And what structurally, if anything, is different about those products?
> A: Well, I'll make it short for you.  For the purpose of this discussion, it's the same architecture.
> Q: Okay.  So for purposes of this discussion, and I want you to be clear, this goes to the infringement analysis.  Is the BI 200 the same as the BI 201 for purposes of infringement?
> A: It's materially the same, yes.

Docket April 1, 2014 Transcript at 335:16-336:3.  When asked about the BI220 and BI221, Mr. Kattan stated they were substantially identical, but pointed out several differences, such as the use of a PXI bus as opposed to a PCI bus, the range of frequency, the components of the measurement circuit, a different prescaler, additional clocks, and different reference voltages.  Id. at 336:11-343:12.  When asked if any of those differences would affect infringement, he said he did not know for sure, but "probably not."  Id. at 341:24-342:1.

Dr. West, GuideTech's own infringement expert, then testified that the BI220 and BI221 were identical for purposes of infringement.  Regarding Mr. Kattan's testimony as to certain differences between the BI220 and BI221, Dr. West stated, "The very specific things that he mentioned, none of them would have anything to do with those -- those claims."  Id. at 345:10-22.

8

Even if GuideTech's infringement expert testified that the products were identical for purposes of infringement, the jury could properly have found that GuideTech failed to meet its burden of proof of infringement by the BI201 and the BI221. Dr. West specifically analyzed, limitation by limitation, infringement by the BI200 and BI220. Regarding the BI201 and the BI221, however, his testimony was by his own admission speculative. He acknowledged that he had not heard of the BI201 and BI221 at all before the trial:

> Q: Now, Dr. West, have you heard of a -- Brilliant Instruments' BI221 product?
> A: I hadn't heard of it until this case -- this trial.
> Q: Okay. What about the -- what about the BI201? Have you heard of that?
> A: Once again, I hadn't heard of it until this trial.

April 1, 2014 Transcript at 247:7-17. Because Dr. West lacked personal knowledge regarding the BI201 and BI221, and did not analyze the products limitation by limitation, the jury could have chosen to disregard his legal conclusion that the two sets of products are identical for purposes of non-infringement. Because Mr. Kattan pointed out several differences between the products, the jury could have chosen to disregard his statement that the products were identical, which was far from certain. Thus, the jury could have reasonably concluded that while GuideTech met its burden of proving infringement by the BI200 and BI220, it failed

9

to do so for the BI201 and BI221. The jury verdict is reconcilable on this point.[1]

### 3. Damages

Brilliant challenges the jury's verdict awarding damages because GuideTech failed to prove lost profits. To be entitled to lost profits, GuideTech must prove that there is a reasonable probability that the patentee would have made the infringer's sales "but for" the infringement. DSU Med. Corp. v. JMS Co., Ltd., 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) (citing State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989)). "To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." Grain Processing Corp. v. Am. Maize-Products Co., 185 F.3d 1341, 1350 (Fed. Cir. 1999).

---

[1] For the same reason that Brilliant's argument regarding "identical" products is denied, GuideTech's motion for new trial is DENIED. GuideTech's motion is based on a April 21, 2014 statement by Brilliant's CEO Mr. Kattan to a customer that the BI221 is identical to the BI220. GuideTech argues that this "new" evidence warrants a new trial under Rule 59. While Rule 59 permits a new trial on certain issues if new evidence comes to light, not any evidence will do. The movant must show (1) the probability that the evidence would have changed the outcome of the trial; (2) the evidence could not have been discovered earlier had the moving party been diligent; and (3) the evidence is not merely cumulative or impeaching. Advanced Display Systems, Inc. v. Kent State University, 212 F.3d 1272, 1284 (Fed. Cir. 2000). Here, Mr. Kattan's statement is consistent with his testimony at trial. GuideTech's own expert, Dr. West, stated the same opinion, although that opinion was ultimately not accepted by the jury. Accordingly, this information does not warrant a new trial. Brilliant's request to strike this motion is DENIED as moot.

The Federal Circuit has adopted a four-factor test, which is a useful but nonexclusive way for patentees to prove they are entitled to lost profits: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit demand; and (4) the amount of profit that the patentee would have made. Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978)). An alternative to the Panduit test is the two-supplier market test. The two-supplier market test requires the patentee to show: (1) the relevant market contains only two suppliers; (2) the patentee has the marketing and manufacturing capacity to make the sales that were lost to the infringer; (3) the amount of profit that the patentee would have made. Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1124 (Fed. Cir. 2003). "In essence, the two-supplier market test collapses the first two Panduit factors into one 'two suppliers in the relevant market' factor." Id.

> a) Absence of acceptable non-infringing substitutes; two suppliers in the market

Brilliant contends that GuideTech did not conduct an analysis of acceptable non-infringing substitutes. However, GuideTech's CEO, Mr. Sigura, testified that in his years of experience in the field, he observed that were only two competitors in the market of high-frequency time interval analyzers -- Brilliant and GuideTech. This is evidence that there were no acceptable non-infringing substitutes and that the market consisted of only two suppliers. Although Brilliant points out contrary evidence, the Court cannot

11

weigh this against GuideTech's evidence.  Because there is substantial evidence to support the jury's finding on this factor, the Court cannot substitute its judgment for the jury's.

    b) Manufacturing and marketing capability to exploit the demand

In its damages case, GuideTech claimed that but for Brilliant's infringement, it would have sold fifty-nine Femto 2000 products in 2009 instead of the one Femto 2000 it did sell.  April 4, 2014 Transcript at 527:1-12.  Brilliant argues that GuideTech failed to present evidence to the jury showing it had both the manufacturing and marketing capacity to meet this demand.

Brilliant continues that GuideTech conceded that it did not have enough employees to manufacture additional Femto 2000's.  Prior to the infringement, GuideTech's final assembly and testing occurred in-house.  Id. at 499:6-15.  But Mr. Sigura admitted that at the time of the infringement, GuideTech had no full-time, in-house employees.  Id. at 500:21-25.  During this period, Mr. Sigura did everything himself: the day-to-day management, production, sales and marketing, and shipping.  Id. at 500:21-501:1-3.  Accordingly, Brilliant reasons GuideTech would not have been able to meet increased demand for Femto 2000's.

As Mr. Sigura explains, however, GuideTech was unable to pay full-time employees because of lack of business due to Brilliant's infringement.  Id.  If it had not been for Brilliant's infringement, GuideTech could have hired employees or contracted others to meet demand.  Mr. Sigura testified that GuideTech could have done so:

12

```
Q: [. . .] Is it your -- Could GuideTech have made those
sales?
A: Absolutely.
Q: And why do you say that?
A: Because I can manufacture as many as -- as I get purchase
orders.  I mean, we have a manufacturing plant 15 minutes
down the street, and they'll be super happy if I give them an
order for a thousand unit.  That's their livelihood.  That's
our livelihood.  So, yeah, I can make as many as -- there is
demand for.
```

Id. at 512:25-513:8. Mr. Sigura's testimony is sufficient to support a finding that GuideTech would have had the manufacturing and marketing capacity if the infringement had not occurred.

          c)    Accounting of the profit that would have been made

Brilliant claims that GuideTech's accounting is riddled with numerous fatal errors.  Calculations of damages must be based on "sound economic proof."  Grain Processing Corp., 185 F.3d at 1350. In particular, Brilliant takes issue with the fact that GuideTech used an average fixed cost of $368,760.00, computed from 2008 to 2010 data, and assumed that these fixed costs would be enough to support the manufacture of fifty-nine Femto 2000's instead of the one Femto 2000 GuideTech did sell.

Under the generally accepted incremental accounting approach, fixed costs, or "costs which do not vary with increases in production, such as management salaries, property taxes, and insurance," are excluded when determining profits.  Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11, 22 (Fed. Cir. 1984).  Put another way, variable costs must be deducted from revenue to arrive at profit, but fixed costs need not be deducted.  While "the damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the

13

extent of the damages as a matter of just and reasonable inference, although the result be only approximate." Id.

According to Mr. Sigura's testimony, GuideTech deducted both fixed and incremental costs from revenue. April 4, 2014 Transcript at 517-520 (explaining that he first calculated average profit per product by subtracting incremental costs from revenue, then deducted average annual fixed costs). GuideTech therefore deducted more costs from revenue than was required by law, which cannot justify granting JMOL in favor of Brilliant.

Brilliant also contends that GuideTech improperly used data from 2008 to 2010 to compute average fixed costs, ignoring data from 2011 and 2014. But Mr. Sigura explained his reasoning for doing so:

> The actual fixed costs are a lot smaller because by that time, I didn't have employees, I lost my admin -- I lost my one engineer that I had that I was paying measly salary, and I didn't have any money to pay anybody. So my costs were down to nothing. We moved to a -- a low-cost facility . . .

Id. at 522:9-15. In other words, he deducted the higher 2008 to 2010 figure from his profit calculation, rather than the lower 2011 to 2014 figure incurred while his company was producing less, in a low cost facility. This higher cost figure is conservative and more accurately depicts what would have occurred if Brilliant had not infringed and GuideTech were able to produce more units to meet demand. Thus, the choice to use the 2011 to 2014 cost figure is actually more favorable to Brilliant. Separately, Brilliant's suggestion that litigation costs incurred by GuideTech from 2011 to 2014 should be deducted from revenue is unavailing because GuideTech would not have incurred those litigation costs had it not been for Brilliant's infringement.

14

Overall, GuideTech presented sufficient evidence to sustain the jury's award of lost profits.  Although the jury awarded $342,229.23, which is less than six percent of GuideTech's requested sum, the jury could have done so because it doubted GuideTech would have made all of the sales that it claimed it lost to Brilliant.  This is not surprising because the products are different and not perfect substitutes.  The Femto 2000 has as many as eight channels that can measure pulse width simultaneously, while Brilliant's products have only two channel devices that can only make one pulse width measurement at a time.  Id. at 498:6-11.  The pricing of the two products is different.  Id. at 518, 551.  The jury could have concluded that, because of the greater scale and higher price of GuideTech's products, only some of the demand for Brilliant's products would translate into demand for GuideTech's products.

B.   Permanent Injunction

   1.   Legal Standard

A plaintiff seeking a permanent injunction barring patent infringement must demonstrate that four factors are present before the court may grant such relief: (1) it has suffered an irreparable injury; (2) legal remedies, including monetary damages, are inadequate; (3) the balance of the hardships between the plaintiff and the defendant weighs in favor of granting an injunction; and (4) the public interest would not be impacted negatively by an injunction.  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

2. Irreparable Injury and Inadequacy of Legal Remedies

The "issues of irreparable harm and the adequacy of remedies at law are inextricably intertwined." ActiveVideo Networks, Inc. v. Verizon Comms., Inc., 694 F.3d 1312, 1337 (Fed. Cir. 2012). After eBay, there is no presumption of irreparable harm upon a showing of patent infringement. Id. at 1341. To prove irreparable injury, a patentee must prove that (1) absent an injunction, it will suffer irreparable harm and (2) there is a sufficiently strong "causal nexus" connecting the alleged harm to the alleged infringement. Apple Inc. v. Samsung Electronics Co., Ltd., 735 F.3d 1352, 1360 (Fed. Cir. 2013).

As a preliminary matter, GuideTech conducts no analysis of whether there is a causal nexus between the infringement and the alleged irreparable harm. To establish a causal nexus, GuideTech must show "that the infringing feature drives consumer demand for the accused product." Id. at 1364. While the '231 patent covers a time interval analyzer, the infringing products might include other popular benefits that contribute to demand.

GuideTech argues that it will continue to lose good will, market position, and revenue absent an injunction. GuideTech's arguments in this regard are speculative because they offer little more than attorney argument in support. Evidence of loss of some sales in the past, without more, is insufficient to show that GuideTech is likely to lose sales and market share due to Brilliant's infringing conduct in the future. There is evidence that the opposite is true. Brilliant shows that it is no longer selling the infringing products, instead focusing on the non-infringing ones. GuideTech presents no compelling evidence

16

establishing otherwise. If GuideTech were to lose good will or market position to non-infringing products, then that harm is not sufficiently tied to the infringement and does not justify injunctive relief.

GuideTech also cannot argue that loss of exclusivity justifies an injunction. In 2011, GuideTech licensed its patents to a third party, TimeMetrics. Docket No. 235, 13:13-15. This willingness to license indicates that legal remedies, such as money damages, would be adequate to compensate GuideTech.

3.   Balance of the Hardships

The balance of the hardships involves the consideration of "the relative effect of granting or denying an injunction on the parties" with regards to the parties' sizes, products, and revenue sources. i4i Ltd. Partnership v. Microsoft Corp., 598 F.3d 831, 862 (Fed. Cir. 2010).

GuideTech asserts that its patents cover the cornerstone of the products it manufactures, and so its entire business rests on this injunction. GuideTech also states that if it does not get an injunction, other companies will likely be encouraged to infringe GuideTech's patents, causing it harm. These arguments are again speculative and conclusory. GuideTech has not shown that the harm alleged to continue in the future is tied to Brilliant's infringing activity. The Court cannot issue an injunction protecting GuideTech from any competition, regardless of whether it is infringing, solely because it may harm GuideTech's business.

4.   Public Interest

"The touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance

17

1  between protecting the patentee's rights and protecting the public
2  from the injunction's adverse effects." i4i Ltd. Partnership, 598
3  F.3d at 863.
4      GuideTech argues that consumers "need clear direction from
5  this Court so that they will not unwittingly purchase infringing
6  products." Docket No. 322-5 at 10; see also Docket No. 327 at 22.
7  The public has already been notified by judgment entered in this
8  case.
9      GuideTech further argues that, because GuideTech has the
10 capability to serve the market even if Brilliant ceased to exist,
11 the public will still benefit from the technology embodied by the
12 '231 patent.  The two products are different, however, and may
13 provide differing utilities to the public.  GuideTech has not
14 shown that the public interest would be served by issuing an
15 injunction.
16     In sum, GuideTech has not proved that any of the eBay factors
17 weigh in favor of granting a permanent injunction.
18 C.   Motions to Seal
19     GuideTech moves to seal portions of its motion for permanent
20 injunction and supporting exhibit, the deposition of Mr. Kattan.
21 GuideTech asserts they include information designated by Brilliant
22 as "Highly Confidential." See Docket No. 322.  Brilliant never
23 filed a supporting declaration as required by Civil Local Rule
24 79-5(e).  The motion to seal therefore must be DENIED.
25     If it is obvious that the information was accidentally
26 overdesignated and should not be sealed, as a matter of common
27 sense, the parties should confer before filing an unnecessary
28 motion to seal.  If the motion has already been filed, then the

18

designating party may file a declaration withdrawing its designation for purposes of the motion.  This would save the parties the trouble of drafting an unnecessary motion and the Court the trouble of reviewing it.

CONCLUSION

Brilliant's motion for JMOL (Docket No. 324) is DENIED because the jury was properly instructed, there is sufficient evidence to support the verdict, and the verdict is not irreconcilably inconsistent.

GuideTech's motion for new trial or administrative relief (Docket No. 330) is DENIED because the claimed new evidence is cumulative.  Brilliant's motion to strike that motion as untimely (Docket No. 331) is DENIED as moot.

GuideTech's motion for a permanent injunction (Docket No. 322) is DENIED for failure to show that the eBay factors are met.

GuideTech's motion to seal (Docket No. 322) is DENIED. GuideTech shall file unredacted versions in the public docket no later than seven days after the issuance of this order.

IT IS SO ORDERED.

Dated:  08/22/2014

CLAUDIA WILKEN
United States District Judge